1

LONGYEAR, O'DEA & LAVRA, LLP

2

3620 American River Drive, Suite 230
Sacramento, California 95864-5923

3

Tel: 916-974-8500 Fax: 916 974-8510

4

5

John A. Lavra, CSB No. 114533
Jeri L. Pappone, CSB No. 210104

6

Attorneys for Defendants, LOU BLANAS, as SHERIFF OF COUNTY
OF SACRAMENTO; COUNTY OF SACRAMENTO,

7

SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO

8

9

UNITED STATES DISTRICT COURT

10

EASTERN DISTRICT OF CALIFORNIA

11

DAVID K. MEHL, LOK T. LAU,
and FRANK FLORES,

12

13

Plaintiffs,

14

vs.

15

LOU BLANAS, individually and in his
official capacity as SHERIFF OF COUNTY

16

OF SACRAMENTO;
COUNTY OF SACRAMENTO,

17

SHERIFF'S DEPARTMENT;
COUNTY OF SACRAMENTO;

18

BILL LOCKYER, Attorney General,
State of California;

19

RANDI ROSSI, State Firearms Director
and Custodian of Records

20

21

Defendants

22

23

24

25

26

27

28

CASE NO.:   CIV S-03 -2682 MCE KJM

**DECLARATION OF C. SCOTT
HARRIS, JR. IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

I, C. SCOTT HARRIS, JR., declare as follows:

1.     I was a Chief Deputy with the Sacramento Sheriff's Department during 2003 and

2004.

2.     During the time period from 2003 - 2004, when the CCW permit application of

Lok T. Lau was under consideration by the Department, I was assigned to review and make

determinations regarding  CCW permit application *appeals*.

3.      I am familiar with the Sheriff's Department's process for the submission and review of CCW permit applications, the issuance or denial of permits, and the process for an applicant to appeal the initial denial of an application.  This process, which had been in place for many years, involved the following steps.  The CCW permit application process included an initial review of the applications submitted to the Special Investigations and Intelligence Bureau ("SIIB") of the Sheriff's Department, by the Detective assigned to SIIB.  When an application was received by SIIB, the standard practice of the Sheriff's Department was for the Detective to review the application, run a criminal records check on the applicant, and if additional information was needed to complete the application,  contact the applicant either by telephone call or correspondence to obtain any additional information if necessary.  Once an application was complete, the application package was submitted to the three-person committee for review and determination of approval or denial.  The reviewing committee was comprised of three persons (which at no time included the Sheriff), who reviewed application packages submitted by individuals who wanted to obtain a permit to carry a concealed weapon. If an application was approved, the applicant was notified and requested to submit fingerprints for a Department of Justice ("DOJ") clearance.  Once clearance by the DOJ is received, the applicant was also required to submit proof to SIIB that he had qualified with his weapon at an approved  shooting range.  If all parameters were met, a permit was issued by the Department.

4.      If an application was denied by the committee, the applicant was notified by mail of the denial and also informed that the denial may be appealed.  Upon appeal, an applicant could submit additional information to the officer handling appeals.  This appeals officer is not a member of the three-person committee, but an administrative officer assigned to conduct these appeals as a part of his duties.  The appeals officer reviews all materials in the original application as well as any additional information submitted by the applicant on appeal.  A personal interview with the applicant was also conducted by the appeals officer.  After an independent review of all

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento,   CA
95864
(916) 974-8500

DECLARATION OF C. SCOTT HARRIS, JR.

Page 2

the information received, the appeals officer would make a separate determination of whether to grant or deny a CCW permit to the applicant. The applicant was thereafter notified by mail of the appeals officer's decision.

5.      In about January of 2004, I was assigned to review the appeal filed by Mr. Lau of the initial denial of his application by the review committee. The committee's review of Mr. Lau's application resulted in a unanimous determination to deny his application based upon the many issues raised in his application file. All three members of the committee agreed that it was inappropriate to issue Mr. Lau a concealed weapons permit based upon the information in his file. A true and correct copy of Lok T. Lau's CCW application file as maintained by the Sacramento County Sheriff's Department, is submitted herewith as Exhibit A.

6.      In early 2004, I received Lok Lau's appeal of the denial of his application for a CCW permit. I reviewed Mr. Lau's original application and the documents and correspondence submitted by Mr. Lau along with his appeal. I reviewed all the materials presented by Mr. Lau in support of his application and appeal, as set forth in Exhibit B.

7.      It was my practice not to discuss an appeal with the Committee who had denied the permit, but to provide an independent review of the applicant's file. In addition, I would not consult with others in the Department regarding any appeal which I was handling. In any review of a denial, there were times when I would over-rule the committee and grant the application, and other times when I would uphold a denial of an application. After my review of an appeals file, I would make arrangements to personally meet with an appeals applicant, and I did so with Mr. Lau. My secretary at the time contacted Mr. Lau by telephone and made arrangements for me to meet with him personally to go over his application.

8.      I met with Mr. Lau in my office at 711 G Street to discuss his appeal in about the end of January or beginning of February of 2004. Mr. Lau presented as unusually nervous, drowsy, overly suspicious, and he also appeared to be somewhat paranoid. I asked Mr. Lau in

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento,   CA
95864
(916) 974-8500

DECLARATION OF C. SCOTT HARRIS, JR.

Page 3

that meeting why his previous employer, the FBI, had not supplied a letter approving his application for a CCW permit as is customary for former law enforcement applicants. When individuals who have been honorably retired or otherwise separated from a Federal or State law enforcement agency, such as the FBI, their employer, upon request from the former employee, provides a letter recommending that the former agent be issued a CCW permit. In this case, the FBI did not provide the letter and Mr. Lau had no explanation as to why they did not. I also discussed with Mr. Lau why he felt the need for a CCW permit. Mr. Lau told me that he was concerned that there were still people around from his former days serving undercover for the FBI who would do him harm. I confirmed with Mr. Lau that he was continuing to be treated for Post Traumatic Stress Disorder and Depression, as he had stated in his application, and that he was on various medications as a part of that treatment.

9.       As a result of my personal interview of Mr. Lau and the totality of his application package, I determined that even though there could have been factors which in years past which may have made Mr. Lau vulnerable, there was no current threat to this safety. In addition, within Mr. Lau's application package, there was a letter from his former employer, the FBI, which indicated that the FBI had no knowledge or information indicating that Mr. Lau was under any threat due to his past employment activities with the FBI.

10.      Based upon the totality of the circumstances I reviewed in Mr. Lau's application package, including his discharge from the FBI, the absence of a letter from his former employer approving the issuance of a CCW permit, his shoplifting arrests and convictions, his lying to his employer regarding those arrests, the letter from the Department of Justice/FBI regarding no threats to the safety of Mr. Lau from his previous employment, and Mr. Lau's general presentation and behavior at our meeting, as well as his on-going treatment and medications for psychiatric disorders, I denied Mr. Lau's appeal and sent him a letter informing him of the denial on February 4, 2004. I did not discuss Mr. Lau's application with anyone in the Sheriff's

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento,   CA
95864
(916) 974-8500

DECLARATION OF C. SCOTT HARRIS, JR.

Page 4

1  Department, but made an independent review.

2      11.    During my tenure either on the CCW permit Evaluation Committee or while

3  deciding appeals, Sheriff Blanas never discussed any individual's application with me personally

4  or with the Evaluation Committee, and never requested any special consideration for the issuance

5  of a permit to any individual.  Neither Sheriff Blanas, nor anyone else in the Department, ever

6  discussed with me whether a particular applicant was a campaign contributor, a friend, or a

7  business associate of the Sheriff.  In reviewing Mr. Lau's appeal, I did not know whether or not

8  he had any relationship with Sheriff Blanas.  In deciding Mr. Lau's appeal, as with every

9  applicant appeal, I made an individual assessment as to whether there existed appropriate

10  grounds for that individual to carry a concealed weapon.

11      I have personal knowledge of the foregoing and if called upon to testify thereto could

12  competently do so.

13      I declare under penalty of perjury under the laws of the state of California that the

14  foregoing is true and correct.

15      EXECUTED this __1st__ day of October 2007, at Sacramento, California.

16

17

18  C. SCOTT HARRIS, JR.

19

20

21

22

23

24

25

LONGYEAR, O'DEA &
LAVRA, LLP
3620 American River
Drive, Suite 230
Sacramento,   CA
95864
(916) 974-8500

26

27

28

DECLARATION OF C. SCOTT HARRIS, JR.

Page 5

# CCW APPLICATION
# LOK T. LAU

# **DECLARATION OF**
# **C. SCOTT HARRIS**

# **EXHIBITS A & B**

# CCW APPLICATION
# LOK T. LAU

# **EXHIBIT A**

# SACRAMENTO COUNTY  SHERIFF'S DEPARTMENT

## LOU BLANAS
### *Sheriff*

## CONCEALED WEAPONS PERMIT EVALUATION

APPLICANT'S NAME:  LOK T. LAU

OCCUPATION:  DISABAILITY RETIREMENT

DATE APPLICATION SUBMITTED:  08/02/03

DATE OF EVALUATION:

APPROVED: _____          DENIED: ✓_____

RENEWAL: _____          TRAINING DATE: _____

COMMENTS: _____
_____
_____

_____
Chief David Lind

_____          TOO MANY ISSUES
Captain Jim Cooper

_____
Captain Bill Kelly

*********************************************************************

DATE OF APPEAL: _____          _____
                                     CHIEF C. SCOTT HARRIS, JR.

APPROVED: _____          DENIED: _____

COMMENTS: _____
_____
_____

REFER ALL CORRESPONDENCE TO:  SACRAMENTO SHERIFF'S DEPARTMENT • P.O. BOX 988 • SACRAMENTO, CA  95812-0988

# California Department of Justice
## STANDARD APPLICATION
### for
# LICENSE TO CARRY A CONCEALED WEAPON (CCW)

## Authority

California Penal Code (PC) sections 12050 through 12054 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county may issue a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license). PC section 12051(a)(3)(A) requires the Attorney General to prescribe a statewide standard application form for a CCW license.

## Who May be Issued a License

The licensing authority specified in PC section 12050(a)(1) (a sheriff or head of a municipal police department) may issue a license to persons who are of good moral character, who have completed a course of training, and where good cause exists for issuance of the CCW license. All applicants for a CCW will be fingerprinted and state records will be checked to determine if they are in a prohibiting class. Attachments 1, 2, and 3 (following page 14 of this application) list all categories that would cause a person to be in a class prohibiting them from possessing firearms and being granted a CCW license. These attachments are updated annually to reflect new legislation and other changes in the law.

## Format of CCW License

A CCW license may be issued in either of the following formats:

1. A license to carry concealed, a pistol, revolver, or other firearm capable of being concealed upon the person.
2. Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person.

## Training Required

PC section 12050(a)(1)(B) and (E) specifies that new license applicants must complete a course of training. The training may consist of any course acceptable to the licensing authority. The licensing authority may require either a course not to exceed 16 hours which includes instruction on at least firearms safety and the law regarding the permissible use of a firearm or a community college course not to exceed 24 hours certified by the Commission on Peace Officer Standards and Training. If the licensing authority requires the community college course, it must be uniformly required for all CCW license applicants. The licensing authority may also require annual qualification on the weapon(s) during the term for which the CCW license is granted.

For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours in length, and shall include instruction on at least firearms safety and the law regarding permissible use of a firearm.

-1-

State of California, Department of Justice
Standard Application for CCW License
Case 2:03-cv-02682-MCE-DAD Document 101-0 Filed 04/11/07 Page 10 of 70

## Psychological Testing

In addition to licensing requirements as specified by the licensing authority, jurisdictions may require psychological testing on the initial application. If required, the applicant shall be referred to a licensed psychologist used by the licensing authority for the psychological testing of its own employees. Any fees charged will be the responsibility of the applicant and such fees shall not exceed $150.00 for an initial test. Additional psychological testing of an applicant seeking license renewal shall be required only if there is compelling evidence to indicate that a test is necessary (PC section 12054(c)).

## Completing the Application

Answering all the questions on this standard application does not guarantee the issuance of a CCW license. The determination whether or not to issue the license is the prerogative of the licensing authority. Each licensing authority, in addition to using the state standard application form, will have a written policy summarizing what they require pursuant to PC section 12050(a)(1)(A) and (B). Prior to issuing a CCW, the statutes require proof that:

- The applicant is of good moral character,
- Good cause exists to issue the CCW license,
- The applicant meets residence requirements, and
- The course of training prescribed by the licensing authority has been completed.

The application on the following pages sets forth standardized questions to be used by the CCW licensing authority to determine whether a CCW license shall be issued. The applicant shall not be required to complete any additional application or form for a CCW license, or to provide any information other than that necessary to complete this standard application form except to clarify or interpret information provided herein (PC section 12051(a)(3)(C)).

The applicant will certify that all answers provided are true and correct to the best of their knowledge and belief under penalty of perjury. The applicant will also acknowledge that information disclosed on this application may be subject to public disclosure.

### *Important Instructions*

- Fill out, read, and sign Sections 1 through 5, as directed. Use additional pages if more space is required.

- Sections 6, 7, and 8 must be completed in the presence of an official of the licensing agency.

- Review Section 7 and be prepared to answer these questions orally. Do not write anything in Section 7 unless specifically directed to do so by the licensing agency.

Section 1 - Applicant Personal Information ................................................................. 3
Section 2 - Applicant Clearance Questions ................................................................. 3
Section 3 - Description of Weapon(s) ....................................................................... 5
Section 4 - CCW License Conditions and Restrictions ..................................................... 6
Section 5 - Applicable California Penal Code Sections ..................................................... 7
Section 6 - Agreement to Restrictions and to Hold Harmless ............................................. 10
Section 7 - Investigator's Interview Notes ............................................................... 11
Section 8 - Certification and Release of Information ..................................................... 14

Attachment 1 - California Prohibiting Categories for a CCW License ...................................... 16
Attachment 2 - California Prohibiting Misdemeanors ...................................................... 17
Attachment 3 - Federal Prohibiting Categories for Possessing Firearms ................................... 19

## Standard Application for CCW License

| Official Use Only - Type of Permit Requested |
|---|
| ( ) Standard          ( ) Judge |
| ( ) Reserve Officer   ( ) 90 Day |

## Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application. I understand that all of the information disclosed by me in this application may be subject to public disclosure.

_____
Applicant Signature

Date: July 26, 2003

_____
Witness Signature / Badge Number     _Jackie Gereaux_

Date: 7-30-03

## Section 1 – Applicant Personal Information

Name: _LAU_ (Last)   _LOK_ (First)   _THYE_ (Middle)

If Applicable, Maiden Name or Other Name(s) Used: _George LAU_

City and County of Residence: _Sacramento County_     Country of Citizenship: _U.S.A._

Date of Birth: _5/13/57_   Place of Birth: _Singapore Republic of Singapore_
(City) (County) (State)

Height: _5' 7"_   Weight: _180 lb._   Color Eyes: _Brown_   Color Hair: _Black_

## Section 2 – Applicant Clearance Questions

1. Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
   No __✓__ Yes _____ (If yes, please indicate below. Use additional pages if necessary.)

   Issuing Agency_____ Issue Date _____ CCW#_____

2. Have you ever applied for and been denied a license to carry a concealed weapon?
   No __✓__ Yes _____ (If yes, give agency name, date and reason for denial.)

_____

_____

-3-

State of California, Department of Justice
## Standard Application for CCW License

## Section 2 – Applicant Clearance Questions – (continued)

3. Have you ever held and subsequently renounced your United States citizenship? No ✓ Yes _____ (If yes, explain):

_____

4. If you served with the Armed Forces, were you ever convicted of any charges or was your discharge other than honorable?  No ✓ Yes _____ (If yes, explain):

_____

_____

5. Are you now, or have you been, a party to a lawsuit in the last five years? No ____ Yes ✓ (If yes, explain):

I had filed a Title Seven lawsuit (Employment discrimination) lawsuit in the federal district court in Sacramento in February of 2001 against my employer, the F.B.I.

6. Are you now, or have you been, under a restraining order(s) from any court? No ✓ Yes _____ (If yes, explain):

_____

_____

7. Are you on probation or parole from any state for conviction of any offense including traffic? No ✓ Yes _____ (If yes, explain):

_____

_____

-4-

State of California, Department of Justice

# Standard Application for CCW License

## Section 2 - Applicant Clearance Questions - (continued)

8. List all traffic violations (moving violations only) and motor vehicle accidents you have had in the last five years. (Use additional pages if necessary.)

| Date | Violation / Accident | Agency / Citation # |
|------|---------------------|---------------------|
| | None | |
| | | |
| | | |
| | | |

9. Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other country?

   No_____ Yes ✓_____ (If yes, explain including date, agency, charges, and disposition.)

   On April 10 1991; I had a misdemeanor charge by Ann Arbor Police Dept. Michigan for retail fraud. I pled 'no contest' fined $200, done 72 hours community service and placed on six months probation.

10. Have you withheld any fact that might affect the decision to approve this license?

    No ✓ Yes_____ (If yes, explain):

   _____

   _____

## Section 3 - Descriptions of Weapons:

List below the weapons you desire to carry if granted a CCW. You may carry concealed only the weapon(s) which you list and describe herein, and only for the purpose indicated. Any misuse will cause an automatic revocation and possible arrest. (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|---|------|-------|---------|-----------|
| 1. | Smith and Wesson | Chief Special | .38 calibre | J952438 |
| 2. | Colt | Detective Special | .38 calibre | 20615 |
| 3. | S.W | 1076 | 10 mm | TH89994 |

## Section 4 – CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:
- Consume any alcoholic beverage.
- Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
- Be under the influence of any medication or drug, whether prescribed or not.
- Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
- Impede any peace officer in the performance of his/her duties.
- Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
- Unjustifiably display a concealed weapon.
- Carry a concealed weapon not listed on the permit.
- Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code - Title 49, Chapter 26, Section 1472 (1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

State of California, Department of Justice

# Standard Application for CCW License

## Section 5 – Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

### Penal Code Section 12051 - Applications for CCW Licenses; False Statements

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.

(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:

   (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.

   (2) A criminal conviction.

   (3) A finding of not guilty by reason of insanity.

   (4) The use of a controlled substance.

   (5) A dishonorable discharge from military service.

   (6) A commitment to a mental institution.

   (7) A renunciation of United States citizenship.

### Penal Code Section 192 - Manslaughter

Manslaughter is the unlawful killing of a human being without malice.

(a)    Voluntary - upon a sudden quarrel or heat of passion.

(b)    Involuntary - in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

### Penal Code Section 197 - Justifiable Homicide; Any Person

Homicide is justifiable when committed by any person in any of the following cases:

1.    When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2.    When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

3.    When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4.    When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

State of California, Department of Justice
**Standard Application for CCW License**
Case 2:03-cv-0268... Document 101 Filed 10/15/07 Page 16 of 70

## Section 5 – Applicable California Penal Code Sections – (continued)

**Penal Code Section 198 - Justifiable Homicide; Sufficiency of Fear (Limitation of Self-defense of Property Rule)**

A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code Section 199 - Justifiable and Excusable Homicide; Discharge of Defendant**

The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

**Penal Code Section 12035 - Storage of Firearms Accessible to Children**

(a) As used in this section, the following definitions shall apply:
   (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
   (2) "Child" means a person under the age of 16 years.
   (3) "Off-premises" means premises other than the premises where the firearm was stored.
   (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.
(b)(1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
   (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
   (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
   (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
   (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
   (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
   (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
   (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
   (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

State of California, Department of Justice

## Standard Application for CCW License

# Section 5 – Applicable California Penal Code Sections – (continued)

**Penal Code Section 12036 -Firearms Accessed by Children and Carried Off-premises**

(a) As used in this section, the following definitions shall apply:

    (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.

    (2) "Child" means a person under the age of 16 years.

    (3) "Off-premises" means premises other than the premises where the firearm was stored.

    (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian and the child obtains access to that firearm and thereafter carries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this Section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if any one of the following circumstances exists:

    (1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.

    (2) The pistol, revolver, or other firearm capable of being concealed upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.

    (3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.

    (4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.

    (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.

    (6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.

    (7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

State of California, Department of Justice

**Standard Application for CCW License**

## Section 6 – Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 - California Prohibiting Categories for a CCW License, Attachment 2 - California Prohibiting Misdemeanors, and Attachment 3 - Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

_____          August 2nd, 2003
**Applicant Signature**                          **Date**

_____          8-2-03
**Witness Signature / Badge Number**             **Date**

-10-

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes

Applicant Name: **LAU** (Last)   **LOK** (First)   **THYE** (Middle)

Date of Birth: **5 | 10 | 57**   Age: **47**

Social Security No.: **378 - 78 - 9467**

California DL/ID No.: **B 415 1262**

Driver's License Restrictions: **None**

Residence Address:
**3828 Woodcrest Road, Sacramento, CA. 95821**
Number   Street   Apt.   City   State   Zip

Mailing Address (if different):
**Same as above**
Number   Street   Apt.   City   State   Zip

Home / Personal Phone Numbers: **(916) 485-0430**

Spouse's Name and Address: **Never Married**

Applicant Occupation: **Former F.B.I. agent on disability retirement**

Business / Employer Name:

Business Phone Number: (    ) **N.A.**

Business Address:

Number   Street   Apt.   City   State   Zip

1. List all previous home addresses for the past five years.

**Same address as above for the past twelve years.**

-11-

State of California, Department of Justice
Case 2:03-cv-02682-MCE-KJM   Document 131   Filed 10/15/07   Page 20 of 70
Standard Application for CCW License

## Section 7 – Investigator's Interview Notes – (continued)

2. Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ?   No ✓ Yes_____ (If yes, explain):

_____

_____

3. Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illegal controlled substance, or have you ever reported to a detoxification or drug treatment program?   No ✓ Yes_____ (If yes, explain):

_____

_____

4. Have you ever been involved in an incident involving firearms?
No ✓ Yes_____ (If yes, explain):

_____

_____

_____

5. Have you been involved in a domestic violence incident?
No ✓ Yes_____ (If yes, explain):

_____

_____

6. List any arrests or formal charges, with or without disposition, for any criminal offenses within the U.S. or any other country (civilian or military).

1) On April 10, 1991, plead "no contest" to misdemeanor charge retail fraud. Fine of $200; 72 hours community work and six months probation.

2) On 11/08/98, Petty Theft arrest, dismissed by district attorney's office. See attachment (A)

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes – (continued)

If the CCW license is desired for self-protection, the protection of others, or for the protection of large sums of money or valuable property, you are required to explain and provide good cause for issuance of the license. For example, has your life or property been threatened or jeopardized? Explain incidents and include dates, times, locations, and names of police agencies to which these incidents were reported.

Details of Reason for Applicant Desiring a CCW License (use additional sheets if needed).

See attachment I.

-13-

State of California, Department of Justice
## Standard Application for CCW License

# Section 8 – Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 12051(b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____
Applicant Signature

July 26, 2003
_____
Date

_____
Witness Signature / Badge Number

7-26-03
_____
Date

-14-

**Attachment I**

**Details of reason for Applicant (Lok T. Lau) applying for a permit to 'Carry a Concealed Weapon'(CCW) License.**

——

During my tenure as an FBI agent, I was a member of the criminal justice system directly responsible for the investigation, arrest and incarceration of criminal offenders belonging to powerful and dangerous entities, including foreign governments very hostile to the United States of America. After my transfer to Sacramento, California , I was assigned various duties, including the apprehension of bank robbers and fugitives, Asian "organized crime, illegal aliens apprehension on the high- seas, white-collar crimes and Asian organized auto insurance fraud.

Over the past few years, disturbing and embarrassing as it had been for the FBI, several senior FBI agents were arrested for espionage and other serious violations of law  that affected the national security of the United States of America. In the notorious FBI Special Agent Robert Hanssen spy case along with the recent Katrina Leung case involving FBI agents, it became apparent that the names and assignments of the covert FBI agents in foreign counter- intelligence matters had been compromised and many lives had been lost and endangered because of the monumental failures of  FBI management in not rooting out spies within its rank and file in spite of numerous red flags or warnings by other FBI agents and sources. Please see attached news articles and letters from my attorney to the FBI and the responses from the FBI. As a result of the recent revelation of the Katrina Leung aka Man Ying Chan's double agent scandal and indictments, my life is presently in great danger and I fear for my life every waking minute.

It should be noted that I became a Special Agent(investigator) for the Federal Bureau of Investigation(FBI) in 1986.  I was unlawfully terminated in February, 2000 for allegedly shop-lifting in December of 1996. My termination was simply retaliation by FBI management for my being a whistle-blower and having filed charges of discrimination against FBI management. It should be further noted that the wrongfulness and the lack of merit in my dismissal are evident in the events that preceded my termination from the rolls of the FBI. Moreover, the subsequent dismissal of the alleged charge of shop-lifting by the Sacramento's District Attorney's Office are further evidence of my innocence.

If I had been rightfully or legally discharged from the FBI, the following

finders of fact, consisting of various governmental agencies, would not have reversed the decisions of the FBI and provided the following monetary as well as health benefits to me:

1) Unemployment benefits were provided to me by the California Labor Department even though the FBI appealed twice against my receiving benefits from the Labor Board due to what they described as a termination due to alleged shop-lifting, etc.

2) My disability retirement pension by the Office of Personnel Management (OPM is a federal agency in charge of providing retirement pay-rolls for all federal employees) which provided disability retirement to me shortly after I was terminated from the rolls of the FBI. It is ironical that I was terminated from the rolls for alleged misconduct and yet The Office of Personnel Management(OPM) placed me on their payroll for disability retirement in spite of FBI protestation.

3) The Social Security Administration also pay towards my retirement according to the tenure of my service in the FBI. My disability retirement was due to the fact that I had been diagnosed with 'Post Traumatic Stress Disorder(PTSD)', Major Depression because of working six long years of deep undercover assignment without proper training straight out of the FBI Academy.

My PTSD and 'Major Depression' have been caused by six years of highly dangerous deep undercover work for the FBI in foreign counter-intelligence assignments as a rookie agent which was against FBI policy and procedure.

The above monetary benefits as well as health care benefits are further proof that my termination by the FBI had been questionable at the very least and had been illegal and a travesty of justice in spite of my sacrifice and devotion as an FBI agent.

In closing, it should be noted that a good part of my life has been devoted to the service of my country, the intelligence community and the FBI. I am disabled now after a long and difficult service to my country and the government. It should be noted that my lengthy and dangerous undercover assignment as an FBI agent was straight out of the FBI Academy- a violation of the FBI's policies and procedures for an FBI agent to conduct undercover work without at least 4 years of experience conducting routine FBI investigations.

Special and specific emphasis should be placed on the recent FBI spy and sex scandal involving double agent Katrina Leung, which makes my current life outside the FBI family especially vulnerable, and now makes my previous assignments so much more dangerous and scary, in retrospect. I live in constant and daily fear of my undercover life catching up with me, and certainly require a CCW's permit to better protect myself.

Please contact me if there are any questions in regard to my application for a CCW permit from your department. Thank you for your attention to this urgent matter concerning my very survival as a retired FBI agent and a former deputy sheriff in Washtenaw county, Michigan state.

Lok T. Lau   Dated July 25, 2003

# SACRAMENTO COUNTY  SHERIFF 'S DEPARTMENT

## LOU BLANAS
### *Sheriff*

October 28, 2003

TO:                 APPLICANT FOR CONCEALED WEAPONS PERMIT

FROM:           DETECTIVE STEVE BRAY
                     SPECIAL INVESTIGATIONS BUREAU

SUBJECT:        **APPLICATION FOR CONCEALED WEAPONS PERMIT**

Your request for issuance of a concealed weapons permit with Sacramento County
Sheriff has been denied.

Reason for application/justification did not provide convincing evidence that applicant or
family members are in any immediate danger associated with everyday course
of living as to justify the need to carry a concealed weapon.

Applicant may have weapon at home and in business. If your circumstances change
And, you wish to re-apply you may do so after one year from the date of denial.

You may appeal this decision. If you wish to schedule an appeal please call Tamara Eads at
874- 7146 for an appointment.

If you have any questions, please call me at 874-5086.

Very truly yours,

SHEIFFF, LOU BLANAS

Detective Steve Bray
Special Investigations

# CCW APPLICATION
# LOK T. LAU

# APPEAL

## **<u>EXHIBIT B</u>**

# SACRAMENTO COUNTY  SHERIFF'S DEPARTMENT

## LOU BLANAS
*Sheriff*

February 4, 2004

Mr. Lok T. Lau
3828 Woodcrest Road
Sacramento, CA 95821

RE: **APPEAL FOR CONCEALED WEAPONS PERMIT**

Your appeal request for issuance of a concealed weapons permit with the Sacramento County
Sheriff's Department has been denied.

Reason(s) for application/justification did not provide convincing evidence that applicant or
family members are in any immediate danger associated with everyday course
of living as to justify the need to carry a concealed weapon.

Applicant may have weapon at home and in business. If your circumstances change
and, you wish to re-apply you may do so after one year from the date of denial.

Very truly yours,

LOU BLANAS, SHERIFF

COPY

Chief Deputy C. Scott Harris, Jr.
Administrative Services

Sheriff Lou Blanas
Sacramento County Sheriff's Department,
711 'G' Street
Sacramento, CA. 95814

Re: Request for Concealed Weapon Permit (CCW)


Dear Sheriff Blanas,

This follows up your letter dated October 28, 2003 in which I have just received recently concerning my application for concealed weapons permit(CCW) which was denied. You stated in your letter that "Reason for application/justification did not provide convincing evidence that applicant or family members are in any immediate danger associated with everyday course of living as to justify the need to carry a concealed weapon." I can provide additional facts and details, which will substantiate my need for a CCW Permit.

I find this initial conclusion for the denial of my application for a CCW permit most appalling, especially in light of my almost two decade of dangerous law enforcement and counter-intelligence work as a deputy sheriff, a CIA operative and subsequently as an FBI agent. Please provide the statistics of similarly situated former law enforcement officers whom were denied CCW permits when they applied for one before the Sacramento's Sheriff's Department.

The murder of a Chinese American citizen (Henry Liu) in the San Francisco Bay Area which was front page news, in the mid 1980s, by a ruthless criminal organization, The Bamboo Gang( Chinese Triad) based out of the Republic of China (ROC). The victim in this case was murdered as he arrived at his home in Daly City, CA, simply because in his employment as a journalist for an American based Chinese newspaper, he had written articles which were uncomplimentary towards the leadership on the island of Taiwan.

During the course of my employment with the FBI, in an undercover capacity, I encountered members of similar organized criminal organizations, on an almost daily basis. Recently, my true identity was compromised, by reason of my filing a formal lawsuit against my previous employer, for the very reason I am requesting a CCW permit, i.e. that my organization failed to adequately protect me from such an eventuality, as having my identity compromised. Being that my mission was to infiltrate Asian criminal organizations both domestically as well as overseas, a reasonable person would conclude, that this activity in and of itself, was comparatively more dangerous, than the motive which resulted in said assassination.

The following documents are been provided as to further demonstrate the fact that during my tenure as an FBI agent, I had arrested many dangerous criminals wanted by the federal authorities as well as Sacramento's law enforcement agencies. In addition, I am also enclosing approximately one hundred pages of news articles published recently by USA Today, Associated Press to California First Amendment Coalition(CFAC) concerning my dangerous assignments and duties as an FBI agent. Finally, I strongly feel that I should be afforded a CCW permit per California sub-penal code 12031 sub-section 8, which authorizes former law enforcement officers



to carry concealed weapon because of their past arrests of the violent criminal elements in our society.

The following are highlights of some of the awards and commendations for which I had received for my apprehension or conviction of very dangerous and violent criminals:

1)    A)Letter of commendation in 1988 by FBI Director William Session for exceptional sacrifice and achievement of a dangerous undercover assignment still highly classified to date. See attached photograph  B) Performance Appraisal Report in 1991 describing my highly dangerous and sensitive investigation of dangerous foreign agents from "Major Criteria Country...."

2) Letter of commendation by Sacramento's Interim Chief of Police Jerry V. Finney in 1992 for penetrating a Vietnamese gambling den in Sacramento operated by a well known organized crime figure- Mr. Chok Chai Chow whom was subsequently arrested and convicted due to my efforts as an FBI investigator.

3)A certificate and two Letters of Appreciation in 1993 by Regional Program Manager David Whitt of Immigration and Naturalization(INS) for my "Outstanding Contributions in the field of Anti- Smuggling Law Enforcement" and Chinese alien Smuggling.

4) In 1995, a letter of appreciation by the U.S. National Drug Intelligence Center's Unit Chief James Confer for my contributions  towards "analysis of Asian Strategic Organizational Drug intelligence." See photo attachments of interception of  Chinese alien ship at high seas with the U.S. Coast Guard.

5) Detective Paul Olson of the San Diego Police Department provided a letter of appreciation for my assistance in solving part of a major fraud scheme by organized crime figures spanning from San Diego, California to Sacramento.(redacted copy)

6)Transcript of  testimony at the U.S. District Court at Seattle before District Judge Thomas Zilly, State of  Washington on a case involving kidnapping, extortion and hostage taking involving illegal Chinese alien-smuggling by Chinese organized crime figures known as ' Snake Heads' from Communist Mainland China.

7) Redacted copy of a teletype by the Seattle FBI Division to FBI San Francisco and FBI Sacramento's Division simultaneously requesting my assistance to further the investigation of two separate Chinese Organized Criminal organization involving highly dangerous and violent Vietnamese criminal elements in Sacramento, California.(Stockton Blvd.)

8)1996 Statistical Accomplishments Reports of  my  Arrests, Indictments, Locates, Restitution, Convictions and Sentences as an FBI Agent in Sacramento, California.

9) 1997 Statistical Accomplishments Reports of  my  Arrests. Indictments, Locates, Restitution, Convictions and Sentences as an FBI Agent in Sacramento. California.

10) 1998 Statistical Accomplishments Reports of my Arrests, Indictments, Locates, Restitution, Convictions and Sentences as an FBI Agent in Sacramento, California.

11) Heavily redacted communication from National Security Division of FBI Headquarters discussing my captioned file and discussion about incentive awards for my accomplishments during my dangerous undercover days for the Bureau.

12) Memorandum from U.S. Deputy Attorney General John C. Vail, Chairman of the Access Review Committee dated December 13, 2000. This document is the result of an extensive investigation and findings by the U.S. Justice Department which concluded that the FBI had failed to provide safeguards and treatment for me during my dangerous and lengthy undercover assignment. See pages 5, 6 and 7.

13) A letter by my attorney dated April 23, 2003 to the FBI concerning my safety due to the recent allegation by the FBI that former FBI's informant Katrina Leung had compromised the names of numerous FBI's deep undercover operatives to 'very dangerous instrumentalities and individuals'.

14) Letter of reply by the FBI concerning the Katrina Leung's double agent allegation by the FBI and my safety.

15) June 17, 2003 letter by Deputy Director Edward Duncan of the U.S. Department of Labor, Office of Workers' Compensation(OWCP) advising that my OWCP's hearing is being postponed due to lack of security measures in his office to hear my case. Consequently, the FBI would bear the cost of flying me to Washington D.C. OWCP Headquarters instead for the upcoming hearing.

16) An article by the ABCNEWS.com titled "FBI Knew About Alleged Double Agent".

17) The Sacramento News and Review cover story on me along with over a hundred pages of news articles to include the Associated Press, New York Times, USA Today, Washington Post and other newspaper and internet web-sites.

18) A federal court order sealing some of my documents that had been filed with the court due to risks of exposing 'national security issues' due to my past duties and assignments as a FBI agent.

Without question, the above documents, photographs and news articles would demonstrate to anyone with 'convincing evidence' that I have a tremendous need to carry a concealed weapon due to my devotion of almost two decades of my life towards law enforcement and the intelligence community. In the course of the aforementioned dedication and my attempts to keep this great nation and its citizenry safe, I have forever created many powerful enemies from the criminal world and world of 'cloak and dagger.' These foreign agents from very hostile criteria countries working against the interest of United States of America are also well known for their often violent behaviors. Since the recent endless national or world wide exposure by the various media of my past as a deep undercover FBI agent, I truly need the CCW permit now more than ever in order to better protect myself. I truly hope you would facilitate my application for a

CCW permit and please advise what recourse I would have in the event that I'm turned down in my appeal before you.

In closing, I wish to emphasize that on the face of this denial of my request, some media outlets who have been carrying my story, may interpret this action as another example of US based law enforcement officials, of being extremely callous and perhaps even engaging in discriminatory conduct, in denying me the ability to protect myself and my family. The inference being that elected law enforcement officials will provide CCW permits to influential and powerful people (such as actor Robert Blake who is accused of using his weapon to murder his spouse) yet deny requests of ordinary individuals who actually need protection, based upon their circumstances. In my case, I have had paid the ultimate price in order to protect democracy and uphold the law in this great nation of ours.

Yours very truly,

Lok T. Lau
3828 Woodcrest Road,
Sacramento, CA. 95821
Tel: (916)485-0430

CC:   Chief Scott Harris
      Detective Steve Bray

# DOCUMENTS PROVIDED TO SHERIFF'S DEPARTMENT BY LOK T. LAU

(Rev.1/4/99)

**DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
**INTERNAL ROUTING/ACTION SLIP**

| To | Room | Name | To | Room | Name |
|----|------|------|----|------|------|
| _ | 7176 | Director | _ | 7129 | Mr. DeFeo |
| _ | 7142 | Deputy Director | _ | 7129 | Mr. O'Connor |
| | | | _ | 7129 | Ms. Southers |
| | | | _ | 7129 | Mrs. Roberts |
| | **Assistant Directors:** | | _ | 11102 | Ms. Despeaux |
| | | | _ | 11112 | Mr. Dixon |
| _ | 11255 | CJIS | _ | 11112 | Mr. Figliuzzi |
| | QUANT | Training Division | _ | 11861 | Mr. Nesbitt |
| _ | 6012 | Administrative Services Division | | QUANT | Mr. Perry |
| _ | 5829 | Information Resources Division | _ | 11861 | Mr. Roberts |
| _ | 7110 | National Security Division | | | |
| _ | 7116 | Criminal Investigative Division | _ | **Administrative Unit:** | |
| _ | 3090 | Laboratory Division | | | |
| _ | 7825 | Inspection Division | | | |
| _ | 6032 | Finance Division | | | |
| _ | 7427 | Office of the General Counsel | _ | **Adjudication Unit I:** | |
| _ | 7129 | Office of Professional Responsibility | | | |
| _ | 7240 | Office of Public & Cong. Affairs | | | |
| _ | 7901 | Office of EEO Affairs | | | |
| _ | QUANT | Crit. Inc. Response Group | _ | **Adjudication Unit II:** | |
| _ | 4981 | SAMMS Board | | | |

_ Internal Investigative Unit I:

_____

_ Internal Investigative Unit II:

_____

_ Law Enforcement Ethics Unit:

_____

Re: JOHN — THIS WILL DOUBTLESSLY BE THE
BASIS FOR A WHISTLEBLOWER RETALIATIO
CLAIM SO WE NEED TO ENSURE THAT IT IS
EXPLORED QUICKLY AND THOROUGHLY, AND
NOT DELEGATED TO THE LOCAL OFFICE.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 5-16-10 BY 60309 JCB/u
426662

_ For Information
_ For Action
_ Pls. See Me

From:  Michael A. DeFeo, OPR
Assistant Director
Room:  7129, Ext. 8284



U. S. Department of Justice

Office of the Inspector General
Investigations Division
1200 Bayhill Drive, Suite 220
San Bruno, CA 94066

April 8, 1999

Mr. Lok T. Lau
3828 Woodcrest Road
Sacramento, CA 95821

Dear Mr. Lau:

The information which you recently provided to this office has been reviewed and we have
determined that this matter is more appropriately within the jurisdiction of the FBI Office of
Professional Responsibility (OPR).  As such, we plan to refer your complaint to FBI/OPR.

This matter, however, can not be properly addressed by the responsible agency unless the
Office of the Inspector General discloses your identity.  Without that information the agency
could be precluded from taking any action to address the matter you have brought to our
attention.  At this time, we will not take any further steps to proceed without your written
agreement to reveal your identity to the FBI Office of Professional Responsibility.

Please use this form to indicate your decision, and return it to us using the enclosed pre-
addressed envelope.  A copy is included for your records.  If you have any questions, please
feel free to write to us.

Sincerely,

Ralph F. Paige
Ralph F. Paige
Special Agent in Charge
San Francisco Field Office

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 5/16/00 BY SPS2 X1 RN

[✓]   I understand that my identity may be revealed in connection with any review or other
action on my complaint.  I agree that review or other action on my complaint should
proceed under this condition.

[  ]   I do not wish to have my identity revealed either directly or indirectly, and I
understand that this may limit or terminate any review or other action on my complaint.

_____                    4 | 9 | 99
Signature                                    Date

*Washington, D.C. 20530*

April 21, 1999

Michael A. DeFeo
Assistant Director
Federal Bureau of Investigation
Office of Professional Responsibility
935 Pennsylvania Avenue, NW, Room 7142
Washington, DC   20530-0001

Dear Mr. DeFeo:

The attached complaint, concerning unknwon person(s), was received by this office on March 30, 1999.

This matter is being referred to you for whatever action you deem appropriate.

The Inspector General Act requires that the identity of complainants not be disclosed unless disclosure in unavoidable during the course of an investigation.  Please keep this request in mind in connection with any action that you should take regarding this matter.

Please refer to OIG file No. 9903837 in any correspondence relating to this matter.

Sincerely,

Roger M. Williams
Special Agent in Charge
Of Operations
Investigations Division

Attachment

Received By: Paige, Ralph F                          OIG Number:  SF-499-9903837-M
H  Received: T                                        Date Received: 03/30/99

SUBJECT:
Name: FBI MANAGMENT,                      Component: FBI         EOD:    /  /
Title: EXECG                                 Social Security No:    -  -
Date of Birth:    /  /                    Pay Plan/Grade/Series:   -  /
Alien Number:                             Drivers License:
Home Address: , ,
Work Address: NATIONWIDE, ,
Home Phone:    -    -       Work Phone:    -    -
Judicial Action:              Admin Action:
Misc:


COMPLAINANT:
Name: LAU, LOK T.                         Component: FBI         EOD:    /  /
Title: SA                                    Social Security No:    -  -
Date of Birth:    /  /                    Pay Plan/Grade/Series: GS-13/01811
Alien Number:                             Drivers License:
Home Address: 3828 WOODCREST RD., SACRAMENTO, CA
Work Address: 4500 ORANGE GROVE BLVD., SACRAMENTO, CA
Home Phone: 916-485-0430       Work Phone:    -    -
Limited Contact:              Confidentiality Requested: N
Misc:


ALLEGATIONS: Offense: 499 – Other Official Misconduct
             702 – Retaliation
        Place of Occurrence: NATIONWIDE,             Occurrence Date: ONGOING
        Fee Case Indicator: N       Civil Rights: N   Occurrence Time: --
        Component: FBI             Priority Code: N   Other Number:

Complainant reported that the FBI fails to follow the minimization requirements when
conducting wiretaps under Title III.  Complainant says that this is especially true when
the conversations being recorded are in a foreign language.

Complainant said that he has personally participated in a number of Title III
investigations because of his language abilities.  Conversations in foreign languages are
routinely recorded in total and the tapes are then sent to FBI headquarters for
translation/transcription.

Complainant added that due to manpower shortages, when conducting 24 hour wiretaps, FBI
agents are frequently told to go home at around 11pm and the tape recorders are left
running all night, recording all conversations from that time until the morning shift
comes in at 7am or so.


ASSIGNED TO:  Office: SF    Disposition Assignment: M  Consolidated Case Number:

DISPOSITION DATA:    Date: 03/31/99      Jurisdiction:                        Approval: RFP
                        Referred To Agency: FBI/OPR
  liminary Report Requested?: N   Report Due Date:    /  /    Date Report Received:    /  /


ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 5/16/00 BY SPSSdRi

Complaint Form Per Complainant

REMARKS:
   Xref OIG Complaint Numbers 9806522-M and 9903809.
   Complaint to be fwd to FBI/OPR via OIG/INV/HQ

REFERRAL INFORMATION:                              Date Sent to Component:    /  /
   Agency Control No.:                             Date Closed:    /  /
   Last contacted on:    /  /
   Status: CASE REFERRAL TO DEFEO/FBI & LTR TO COMPL 4/22/99 (BS)

*ANTONIO V. SILVA, P.C.* **COPY**

Attorneys at Law
2616 Montana Avenue
El Paso, Texas 79903

*Antonio V. Silva\**
*Enrique Lopez*
*Licensed in Texas
and New Mexico*

*Phone (915) 564-5444*
*Fax   (915) 564-4413*
*asilva2616@aol.com*

March 1, 2001

Mr. Neil Gallagher
Assistant Director
of National Security Division
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

    *Re:    Lok T. Lau*

Dear Mr. Gallagher:

    This letter is being directed to you as I represent Mr. Lok T. Lau. Mr. Lau previously worked for the FBI and was terminated. During the coarse of this assignment, he engaged in work for the FBI which was of such a nature that recent revealations concerning Special Agent Hansen may have put Mr. Lau in jeopardy. Mr. Lau advises that he believes he is in real physical danger at this point. I would appreciate you contacting me to take the appropriate steps to eliminate this threat.

                    Very truly yours,

                    *ANTONIO V. SILVA, P.C.*

                    By: _____
                        Antonio V. Silva

AVS:ms
cc: Mr. Lau

# *ANTONIO V. SILVA, P.C.*

### Attorneys at Law
### 2616 Montana Avenue
### El Paso, Texas 79903

*Antonio V. Silva\**
*Enrique Lopez*
*Licensed in Texas
and New Mexico*

*Phone (915) 564-5444*
*Fax    (915) 564-4413*
*asilva2616@aol.com*

March 1, 2001

Mr. Michael Waguespack
Deputy Assistant Director
of National Security Division
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

　　　　Re:　　*Lok T. Lau*

Dear Mr. Waguespack:

　　　This letter is being directed to you as I represent Mr. Lok T. Lau. Mr. Lau previously worked for the FBI and was terminated. During the coarse of this assignment, he engaged in work for the FBI which was of such a nature that recent reveelations concerning Special Agent Hansen may have put Mr. Lau in jeopardy. Mr. Lau advises that he believes he is in real physical danger at this point. I would appreciate you contacting me to take the appropriate steps to eliminate this threat.

　　　　　　　　Very truly yours,

　　　　　　　　*ANTONIO V. SILVA, P.C.*

　　　　　　　　By: _____
　　　　　　　　　　Antonio V. Silva

AVS:ms
cc: Mr. Lau

U.S. Department of Justice

Federal Bureau of Investigation

Office of the General Counsel                                    Washington, D.C. 20535

March 23, 2001

Antonio V. Silva, P.C.
Attorneys at Law
2616 Montana Avenue
El Paso, Texas  79903

          RE:  Lok T. Lau

Dear Mr. Silva:

     This is to acknowledge receipt of your letters of March 1,
2001 regarding your client Mr. Lau.

     At this time the FBI is not aware of any facts that would
compromise the safety of your client, Mr. Lau.  Should the
situation change, we will advise you accordingly.

                              Sincerely,

                              Charles M. Steele
                              Deputy General Counsel

# ANTONIO V. SILVA, P.C.
## Attorneys at Law
2616 Montana Avenue
El Paso, Texas 79903

Antonio V. Silva*
Enrique Lopez

*Licensed in Texas
and New Mexico

Phone (915) 564-5444
Fax    (915) 564-4413
asilva2616@aol.com

# COPY

Via facsimile

April 23, 2003

U.S. Department of Justice
Federal Bureau of Investigation
Office of the General Counsel
Attn.: Ms. Deborah Samuel Sills
Assistants General Counsel
Employment Law Unit II
935 Pennsylvania Avenue N.W., Room 7947
Washington, D.C. 20535-0001

Re:    Lok Thye Lau v. Janet Reno, Department of Justice

Dear Ms. Sills:

As you are aware, this law office represents Mr. Lok T. Lau with respect to various employment matters. As a former special agent of the FBI Mr. Lau worked in covert undercover operations against very dangerous instrumentalities and individuals. Mr. Lau had now learned that Atrina Leung compromised many covert operations of the FBI and many operatives. The purpose of this letter is to request whether my client, Mr. Lok. T. Lau, is in any danger as a result of these revelations. If Mr. Lau is in danger I expect the appropriate precautions to be taken for him. Please advise me immediately on this matter.

Very truly yours,

ANTONIO V. SILVA, P.C.

By: _____
Antonio V. Silva

AVS: ms
cc: Mr. Lau
cc: as appropriate

Federal Bureau of Investigation

Office of the General Counsel    Washington, D.C. 20535

May 1, 2003

# COPY

Antonio V. Silva, P.C.
Attorneys at Law
2616 Montana Avenue
El Paso, Texas 79903

            RE: Lok T. Lau

Dear Mr. Silva:

        This is to acknowledge receipt of your letter of April 23, 2003 regarding your client
Mr. Lau.

        At this time the FBI is not aware of any facts that would compromise the safety of your
client, Mr. Lau. Should the situation change, we will advise you accordingly.

                                Sincerely,

                                Anne M. Gulyassy
                                Anne M. Gulyassy
                                Deputy General Counsel

# CERTIFICATE OF SERVICE

I hereby certify that the attached letter was sent to the following person via the indicated method on the date indicated below:

### VIA FACSIMILE:

### Complainant's Representative

Antonio V. Silva, Esquire
Attorney at Law
2616 Montana Avenue
El Paso, Texas  79903
(915) 564-4413

May 5, 2003
Date

Angela Kreitzer-McClay
Paralegal Specialist
Employment Law Unit II
Office of the General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue, N.W.
Washington, D.C.  20535-0001

*BILL LOCKYER*
*Attorney General*



*State of California*
**DEPARTMENT OF JUSTICE**

P.O. Box 903417
SACRAMENTO, CA 94203-4170

December 10, 2002

Lok Lau
3828 Woodcrest Road
Sacramento, CA  95821

Dear Mr. Lau:

Enclosed is a copy of your state summary criminal history record as maintained by the California Bureau of Criminal Identification and Information.  This record has been released under the provisions of California Penal Code Sections 11120 - 11127.

If you wish to challenge the accuracy or completeness of this record, please complete and return the enclosed form (BCII 8706).

If you have any further questions, please address your correspondence to the Record Review Unit at the above address.

Sincerely,

Robert Santos, Assistant Manager
Record Support Section
Bureau of Criminal Identification and Information

For  BILL LOCKYER
Attorney General

RS/kc
Enclosures
BCII 8711 (Rev.12/01)

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
BUREAU OF CRIMINAL
IDENTIFICATION

REQUESTED FOR DISPOSAL PURPOSES
ATTN:RECORD REVIEW G231 KAREN
REQUESTED BY:CA0349400   MNEMONIC:CKDE
DATE:20021209   TIME:13:04:58   PAGE:001

---

CRIMINAL HISTORY TRANSCRIPT          FOR OFFICIAL USE ONLY
    *UNAUTHORIZED USE IS A CRIMINAL OFFENSE*

---

***III MULTIPLE SOURCE

| CII NUMBER | DOB | SEX | RACE | HGT | WGT | EYE | HAIR | POB |
|---|---|---|---|---|---|---|---|---|
| A12397109 | 19570510 | M | OTHER ASIAN | 507 | 150 | BRO | BLK | XX |

NAMES
01 LAU,LOK THYE

MISCELLANEOUS NUMBERS
FBI-798858EA1
CDL-B4151262
SOC-378879467

---

| DATE | AGENCY/FILE NUMBER | NAME | COUNT | ACTION |
|---|---|---|---|---|

---

ARREST/DETAINED/CITED                DOB:19570510
19980916   CASOSACRAMENTO          01     01   488 PC-PETTY THEFT
           530788

                                    02   484(A) PC-THEFT OF
                                         PERSONAL PROPERTY

COURT ACTION
19981014   CASCMCSACRAMENTO        01     01   484(A) PC-THEFT
           97M04841

                                         -DISMISSED

---

* * * *
"PROBATION FLAGS AND/OR DEPARTMENT OF MENTAL HEALTH FLAGS ON THIS RECORD
MAY NOT BE BASED ON FINGERPRINT IDENTIFICATION"
* * * *
    END OF TRANSCRIPT

00605



*BILL LOCKYER*
*Attorney General*

State of California
**DEPARTMENT OF JUSTICE**



BUREAU OF CRIMINAL IDENTIFICATION
AND INFORMATION
P.O. BOX 903417
SACRAMENTO, CA 94203-4170

## <u>CLAIM OF ALLEGED INACCURACY OR INCOMPLETENESS</u>

I have examined a copy of my California State Summary Criminal History Record as contained in the files of the Department of Justice, Bureau of Criminal Identification and Information, and wish to take exception to its accuracy and/or completeness.

NAME: _____

          LAST NAME               FIRST NAME          MIDDLE NAME

CII NUMBER: _____ DATE _____

Complete a statement for each error or inaccuracy claimed. Use additional paper if necessary. Attach copies of any proof or corroboration available.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


_____

SIGNATURE

Return this form to the attention of the Record Review Unit at the California Department of Justice, Bureau of Criminal Identification and Information, P.O. Box 903417, Sacramento, CA 94203-4170.

BCII 8706 (Rev. 4/99)

# ⊙CBSNEWS.com



# Alleged Chinese Double Agent Indicted

WASHINGTON, May 8, 2003

A federal grand jury Thursday indicted alleged Chinese double agent Katrina Leung on charges that she illegally took, copied and kept secret documents obtained from an FBI agent who was both her chief contact and her lover.

But the five-count indictment is most notable for its omission of the more serious charge of espionage against Leung, 49. The indictment was returned by a grand jury in Los Angeles, where Leung has been jailed without bond since her April 9 arrest.

The charges follow a six-count indictment returned Wednesday against Leung's longtime FBI handler and lover, retired counterintelligence agent James J. Smith. Smith was charged with wire fraud for filing false reports to FBI headquarters about Leung's reliability and with gross negligence for allowing her access to classified material.

**CBS Legal Analyst Andrew Cohen** suspects that Smith was charged was negligence rather than espionage because prosecutors felt unsure they could prove he intended to spy on the United States.

Prosecutors say Leung, a valuable FBI source of Chinese intelligence for 18 years, was simultaneously passing secret information obtained from Smith to the People's Republic of China. The breach has raised questions about every Chinese FBI counterintelligence investigation or operation from 1982 to 2000.

Justice Department officials declined comment on why Leung was not charged with espionage, but they did note that more charges could be brought in the future. Prosecutors acknowledge facing a tough balancing act in determining how to deal with classified material in an open court trial.

Leung, a prominent Los Angeles socialite and political activist, was paid $1.7 million by the FBI for her information as an intelligence asset code-named "Parlor Maid."

In a statement issued following Smith's indictment, her attorneys said Leung is being betrayed by a government she served patriotically.

"She is a loyal American who is being stabbed in the back by the people she worked faithfully for for over 20 years," said the statement from attorneys Janet Levine and John Vandevelde.

Smith's attorney, Brian Sun, also has insisted on his client's innocence.

The indictment against Leung charges her with two counts of copying classified documents with the intent to use them to benefit a foreign nation, namely China. The documents were allegedly taken from Smith when he visited Leung at her home in San Marino, Calif.

One document contains details of "Tourist Trap," an FBI investigation into Peter Lee, a TRW Inc. employee who pleaded guilty to spying for China in 1997. Another document is described only as a June 1997 secret FBI electronic communication.

The other three charges say Leung kept those documents without authorization, as well as another document detailing FBI intercepts of Leung's conversations with her Chinese intelligence contact, known only as "Mao."

Leung faces up to 50 years in prison if convicted on all counts, while Smith faces up to 40 years behind bars.

Both Smith and Leung are married to other people. The indictment against Smith repeatedly stressed the impropriety of the relationship and said the agent should have disclosed it in the 19 reports he filed with FBI headquarters about her.

The relationship, Smith's indictment says, "deprived defendant Smith of the required objectivity in evaluating the

ongoing reliability of Katrina Leung."

Leung claimed contacts with some 2,100 Chinese officials and frequently visited China, where she was often seen with high-ranking government officials. The FBI learned in 1991 that she had passed information to a Chinese intelligence officer but the matter was left to Smith to handle.

In his subsequent reports to FBI headquarters, Smith repeatedly vouched for the validity of her information and said she had been verified in part by use of a lie detector. In fact, Leung refused to take a lie detector test.

The government says Leung provided the Chinese with information from FBI files regarding Chinese fugitives, a telephone list of agents involved in an espionage case, lists of agents serving at overseas posts and other classified information.

©MMIII, CBS Broadcasting Inc. All Rights Reserved. This material may not be published, broadcast, rewritten, or redistributed. The Associated Press contributed to this report.

Case 2:03-cv-02682-MCE-KJM   Document 131   Filed 10/15/07   Page 50 of 70



By David Rosenzweig
Times Staff Writer

June 20, 2003

A federal judge in Los Angeles ordered accused Chinese double agent Katrina Leung released on $2-million bond Thursday, with conditions limiting her travel and requiring her to wear an electronic monitoring device.

Leung, who is charged with illegally obtaining, copying and possessing classified FBI documents, will remain in custody for about two more weeks while the deeds to family-owned properties are transferred to the court to secure her bond, her lawyers said.

"We're very gratified about the ruling," said defense co-counsel Janet I. Levine. "She will be home with her family and able to assist us in fighting her case. She's going to stay home. She's not going anywhere."

Leung, 49, a wealthy businesswoman from San Marino, has been held without bail since her arrest April 9 along with retired FBI counterintelligence agent James J. Smith, 59, of Westlake Village. Smith recruited her as a paid informant and supervised her activities for nearly 20 years. The two were also lovers.

Smith was charged with criminal gross negligence in allowing Leung access to classified documents and with fraud for allegedly covering up information that raised doubts about her credibility.

The government contends that Leung was feeding information about FBI counterintelligence operations to the Chinese Ministry of State Security. She has admitted receiving $100,000 from the Beijing government for her services.

Leung's defense maintains that she acted under instructions from her FBI handlers to enhance her credibility with high-level Chinese officials.

In reaching her decision to grant Leung bail, U.S. District Judge Florence-Marie Cooper said she gave considerable weight to Leung's having been aware of the allegations against her for at least four months before she was arrested and making no attempt to flee.

During that time, Cooper noted, Leung submitted to several days of grueling FBI interrogation and two searches of her home, which turned up the classified documents she is accused of illegally obtaining.

Cooper also cited a written declaration from USC professor Stanley Rosen, an expert on treatment of political prisoners, that the Chinese government would probably turn Leung sought sanctuary at one of its embassies. If she managed to enter China on her own, ac Rosen, she would probably be tried, imprisoned and possibly sentenced to death for hav for the FBI. Leung is a naturalized U.S. citizen.

Opposing her release, Assistant U.S. Atty. Michael Emmick argued that Leung's risk of fli "so great that even a $2-million secured bond would be insufficient." He expressed conce Leung and her husband were liquidating their assets, making flight risk more likely. But d attorney John Vandevelde assured the judge that the proceeds were being deposited int trust account to pay her legal fees.

Vandevelde said the Leungs had transferred all of their overseas assets — about $300,0 Hong Kong banks — to the United States and were selling their $1.8-million home in Sar



and two other properties to meet expected legal costs.

In addition to the spy charges, Leung and her husband, Kam Leung, a biochemist, are un investigation for allegedly cheating on their income tax returns.

Emmick also cited a letter that Leung had written to a high-level Chinese government offi in which she said she would "never let my motherland down." Levine countered that the l been written at the direction of the FBI. She called the prosecution "disingenuous" for rai: issue.

The defense had sought Leung's release on $1-million bond, but Cooper doubled the figu increase the likelihood of her appearing for trial. In allowing bail, Cooper bucked, not only prosecution, but the recommendation of the court's pretrial services agency and an earlie a federal magistrate.

Under terms of her release, Leung will be restricted to her home, her lawyers' offices in d Los Angeles and an unidentified location where defense attorneys are allowed to review government documents in the case.

The electronic monitoring device she must wear will be equipped with global positioning : software, enabling court officials to know her whereabouts at every moment.

No date has been set for her trial. She is not directly charged with espionage, but rather v lesser counts of illegally copying and three counts of illegally possessing confidential FBI that could be used to injure the United States or help a foreign nation.

The defense has attacked the possession charges, arguing that they fail to allege that Le reason to believe the documents could be used to harm U.S. interests.

One document is a transcript and summaries of a series of conversations that Leung alle with her handler at the Chinese Ministry of State Security in late 1990 and early 1991.

Another relates to an FBI investigation, code named Royal Tourist, of a former TRW nucl physicist, Peter Lee, who subsequently pleaded guilty to passing classified information to scientists. He received a suspended five-year sentence after the government concluded been a pawn in a Chinese spying operation.

The third document contains a list of fugitives being sought by Chinese authorities.

If you want other stories on this topic, search the Archives at latimes.com/archives.

| Click here for article licensing and reprint options

Copyright 2003 Los Angeles Times
var st_v=1.0; var st_pg=""; var st_ci="703"; var st_di="d001"; var st_dd="st.sageanalyst.net"; var st_tai="v:1.2.1"; var s
if (st_v==1.0) { var st_uj; var st_dn = (new Date()).getTime(); var st_rf = escape(document.referrer); st_uj =
"//"+st_dd+"/"+st_dn+"/JS?ci="+st_ci+"&di="+st_di+ "&pg="+st_pg+"&rf="+st_rf+"&jv="+st_v+"&tai="+st_tai+"&ai="+st,
new Image(); iXz.src = st_uj; }

| Delete | message or move to  Select a Folder ▼                    Back to Inbox | <

                                                          | Reply | | Reply All | | Forward | |As At

The Average Driver Paid $687/YR for Auto Insurance

Do You Pay Too Much?

Click Your State

* As reported by the NAIC

LowerMyBills
www.LowerMyB

Sheriff Lou Blanas                                                December 18, 2003
Sacramento County Sheriff's Department,
711 'G' Street
Sacramento, CA. 95814

Re: Request for Concealed Weapon Permit (CCW)


Dear Sheriff Blanas,

   This follows up your letter dated October 28, 2003 in which I have just received recently concerning my application for concealed weapons permit(CCW) which was denied. You stated in your letter that "Reason for application/justification did not provide convincing evidence that applicant or family members are in any immediate danger associated with everyday course of living as to justify the need to carry a concealed weapon." I can provide additional facts and details, which will substantiate my need for a CCW Permit.

   I find this initial conclusion for the denial of my application for a CCW permit most appalling, especially in light of my almost two decade of dangerous law enforcement and counter-intelligence work as a deputy sheriff, a CIA operative and subsequently as an FBI agent. Please provide the statistics of similarly situated former law enforcement officers whom were denied CCW permits when they applied for one before the Sacramento's Sheriff's Department.

   The murder of a Chinese American citizen (Henry Liu) in the San Francisco Bay Area which was front page news, in the mid 1980s, by a ruthless criminal organization, The Bamboo Gang( Chinese Triad) based out of the Republic of China (ROC). The victim in this case was murdered as he arrived at his home in Daly City, CA, simply because in his employment as a journalist for an American based Chinese newspaper, he had written articles which were uncomplimentary towards the leadership on the island of Taiwan.

   During the course of my employment with the FBI, in an undercover capacity, I encountered members of similar organized criminal organizations, on an almost daily basis. Recently, my true identity was compromised, by reason of my filing a formal lawsuit against my previous employer, for the very reason I am requesting a CCW permit, i.e. that my organization failed to adequately protect me from such an eventuality, as having my identity compromised. Being that my mission was to infiltrate Asian criminal organizations both domestically as well as overseas, a reasonable person would conclude, that this activity in and of itself, was comparatively more dangerous, than the motive which resulted in said assassination.

   The following documents are been provided as to further demonstrate the fact that during my tenure as an FBI agent, I had arrested many dangerous criminals wanted by the federal authorities as well as Sacramento's law enforcement agencies. In addition, I am also enclosing approximately one hundred pages of news articles published recently by USA Today, Associated Press to California First Amendment Coalition(CFAC) concerning my dangerous assignments and duties as an FBI agent. Finally, I strongly feel that I should be afforded a CCW permit per California sub-penal code 12031 sub-section 8, which authorizes former law enforcement officers

to carry concealed weapon because of their past arrests of the violent criminal elements in our society.

The following are highlights of some of the awards and commendations for which I had received for my apprehension or conviction of very dangerous and violent criminals:

1)      A)Letter of commendation in 1988 by FBI Director William Session for exceptional sacrifice and achievement of a dangerous undercover assignment still highly classified to date. See attached photograph  B) Performance Appraisal Report in 1991 describing my highly dangerous and sensitive investigation of dangerous foreign agents from "Major Criteria Country...."

2) Letter of commendation by Sacramento's Interim Chief of Police Jerry V. Finney in 1992 for penetrating a Vietnamese gambling den in Sacramento operated by a well known organized crime figure- Mr. Chok Chai Chow whom was subsequently arrested and convicted due to my efforts as an FBI investigator.

3)A certificate and two Letters of Appreciation in 1993 by Regional Program Manager David Whitt of Immigration and Naturalization(INS) for my "Outstanding Contributions in the field of Anti- Smuggling Law Enforcement" and Chinese alien Smuggling.

4) In 1995, a letter of appreciation by the U.S. National Drug Intelligence Center's Unit Chief James Confer for my contributions towards "analysis of Asian Strategic Organizational Drug intelligence." See photo attachments of interception of Chinese alien ship at high seas with the U.S. Coast Guard.

5) Detective Paul Olson of the San Diego Police Department provided a letter of appreciation for my assistance in solving part of a major fraud scheme by organized crime figures spanning from San Diego, California to Sacramento.(redacted copy)

6)Transcript of testimony at the U.S. District Court at Seattle before District Judge Thomas Zilly, State of Washington on a case involving kidnapping, extortion and hostage taking involving illegal Chinese alien-smuggling by Chinese organized crime figures known as ' Snake Heads' from Communist Mainland China.

7) Redacted copy of a teletype by the Seattle FBI Division to FBI San Francisco and FBI Sacramento's Division simultaneously requesting my assistance to further the investigation of two separate Chinese Organized Criminal organization involving highly dangerous and violent Vietnamese criminal elements in Sacramento, California.(Stockton Blvd.)

8)1996 Statistical Accomplishments Reports of my Arrests, Indictments, Locates, Restitution, Convictions and Sentences as an FBI Agent in Sacramento, California.

9) 1997 Statistical Accomplishments Reports of my Arrests. Indictments, Locates, Restitution, Convictions and Sentences as an FBI Agent in Sacramento. California.

10) 1998 Statistical Accomplishments Reports of my Arrests, Indictments, Locates, Restitution, Convictions and Sentences as an FBI Agent in Sacramento, California.

11) Heavily redacted communication from National Security Division of FBI Headquarters discussing my captioned file and discussion about incentive awards for my accomplishments during my dangerous undercover days for the Bureau.

12) Memorandum from U.S. Deputy Attorney General John C. Vail, Chairman of the Access Review Committee dated December 13, 2000. This document is the result of an extensive investigation and findings by the U.S. Justice Department which concluded that the FBI had failed to provide safeguards and treatment for me during my dangerous and lengthy undercover assignment. See pages 5, 6 and 7.

13) A letter by my attorney dated April 23, 2003 to the FBI concerning my safety due to the recent allegation by the FBI that former FBI's informant Katrina Leung had compromised the names of numerous FBI's deep undercover operatives to 'very dangerous instrumentalities and individuals'.

14) Letter of reply by the FBI concerning the Katrina Leung's double agent allegation by the FBI and my safety.

15) June 17, 2003 letter by Deputy Director Edward Duncan of the U.S. Department of Labor, Office of Workers' Compensation(OWCP) advising that my OWCP's hearing is being postponed due to lack of security measures in his office to hear my case. Consequently, the FBI would bear the cost of flying me to Washington D.C. OWCP Headquarters instead for the upcoming hearing.

16) An article by the ABCNEWS.com titled "FBI Knew About Alleged Double Agent".

17) The Sacramento News and Review cover story on me along with over a hundred pages of news articles to include the Associated Press, New York Times, USA Today, Washington Post and other newspaper and internet web-sites.

18) A federal court order sealing some of my documents that had been filed with the court due to risks of exposing 'national security issues' due to my past duties and assignments as a FBI agent.

      Without question, the above documents, photographs and news articles would demonstrate to anyone with 'convincing evidence' that I have a tremendous need to carry a concealed weapon due to my devotion of almost two decades of my life towards law enforcement and the intelligence community. In the course of the aforementioned dedication and my attempts to keep this great nation and its citizenry safe, I have forever created many powerful enemies from the criminal world and world of 'cloak and dagger.' These foreign agents from very hostile criteria countries working against the interest of United States of America are also well known for their often violent behaviors. Since the recent endless national or world wide exposure by the various media of my past as a deep undercover FBI agent, I truly need the CCW permit now more than ever in order to better protect myself. I truly hope you would facilitate my application for a

CCW permit and please advise what recourse I would have in the event that I'm turned down in my appeal before you.

In closing, I wish to emphasize that on the face of this denial of my request, some media outlets who have been carrying my story, may interpret this action as another example of US based law enforcement officials, of being extremely callous and perhaps even engaging in discriminatory conduct, in denying me the ability to protect myself and my family. The inference being that elected law enforcement officials will provide CCW permits to influential and powerful people (such as actor Robert Blake who is accused of using his weapon to murder his spouse) yet deny requests of ordinary individuals who actually need protection, based upon their circumstances. In my case, I have had paid the ultimate price in order to protect democracy and uphold the law in this great nation of ours.

Yours very truly,

Lok T. Lau
3828 Woodcrest Road,
Sacramento, CA. 95821
Tel: (916)485-0430

CC:   Chief Scott Harris
      Detective Steve Bray

# SACRAMENTO COUNTY  SHERIFF'S DEPARTMENT

## LOU BLANAS
*Sheriff*

October 28, 2003

TO:                    APPLICANT FOR CONCEALED WEAPONS PERMIT

FROM:                  DETECTIVE STEVE BRAY
                       SPECIAL INVESTIGATIONS BUREAU

SUBJECT:               **APPLICATION FOR CONCEALED WEAPONS PERMIT**

Your request for issuance of a concealed weapons permit with Sacramento County
Sheriff has been denied.

Reason for application/justification did not provide convincing evidence that applicant or
family members are in any immediate danger associated with everyday course
of living as to justify the need to carry a concealed weapon.

Applicant may have weapon at home and in business. If your circumstances change
And, you wish to re-apply you may do so after one year from the date of denial.

You may appeal this decision. If you wish to schedule an appeal please call Tamara Eads at
874- 7146 for an appointment.

If you have any questions, please call me at 874-5086.

Very truly yours,

SHEIFFF, LOU BLANAS

Detective Steve Bray
Special Investigations

REFER ALL CORRESPONDENCE TO:   SACRAMENTO SHERIFF'S DEPARTMENT • P.O. BOX 988 • SACRAMENTO, CA 95812-0988



**U.S. Department of Justice**

Federal Bureau of Investigation

Office of the Director                                   *Washington, D.C. 20535*

January 20, 1988

PERSONAL

Mr. Lok T. Lau
Federal Bureau of Investigation
Chicago, Illinois

Dear Mr. Lau:

It is certainly a pleasure for me to take this moment to commend you for your outstanding work on the ▮▮▮▮▮▮ investigation.  In order to further express my appreciation for your efforts during this time, I have approved the enclosed check as a well-deserved cash award for you.

Throughout this lengthy assignment, you have demonstrated your devotion to Bureau ideals by your wholehearted commitment to this matter.  The sensitivity and enthusiasm you have brought to this case have impacted heavily on the success attained.  Without your dedication and professionalism, you might not have been able to endure the personal sacrifices and hardships brought to you during this time.  Your acceptance of this very difficult role is a tribute to all FBI Special Agents as you have performed your myriad duties in an exceptional manner, far above the call of duty.  I thank you for your vital assistance in this instance.

Sincerely yours,

William S. Sessions
Director

Enclosure

Exhibit 1.A

Federal Bureau of Investigation

Performance Appraisal Report - Cover Page

(SEE INSTRUCTIONS ON REVERSE)

| 1. Payroll Name of Employee | 2. Social Security Number |
|---|---|
| LAU LOK T | 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 |

| 3. Position Title, Grade and Number | 4. Office of Assignment |
|---|---|
| SPECIAL AGENT            GS 12 78FO711 | 4619 UC OPN SPT |

5. General Nature of Assignment

Foreign Counterintelligence (FCI) Undercover Operation

6. Summary Rating
**Superior**

7. _Frank M. King Jr._      4/5/91
Signature of Rating Official      Date

I have reviewed and approved this appraisal. ( )See my comments attached.

8. _Michael J. Vogueyfach_      4/5/91
Signature of Reviewing Official      Date

I am aware that a rating of less than Fully Successful on any critical element may preclude me from consideration for promotion and/or office of preference transfer.  In addition, I am aware that my summary rating, if below the Fully Successful level, may preclude my consideration for a within-grade increase (WIGI) and that a summary rating of Unacceptable may be the basis for my reassignment, reduction in grade, or removal.  My signature only indicates that I have reviewed this appraisal, not that I am necessarily in agreement with the information herein or that I am relinquishing my right to request reconsideration of it.

9. _____      4/11/91
Signature of Employee      Date

10. Basis/Reason for Issuance

| | | | | PRAU USE ONLY |
|---|---|---|---|---|
| A | ☒ | End of Annual Period | | |
| T | ☐ | Position Change | Date _____ | Logged _____ |
| O | ☐ | Change in Rating Official | Date _____ | Reviewed _____ |
| N | ☐ | Current Appraisal | Date _____ | Entered _____ |
| O | ☐ | Requested by FBIHQ | Date _____ | Verified _____ |
| D | ☐ | Conclusion of Detail | Date _____ | Printout _____ |
| W | ☐ | Unacceptable - Warning | Date _____ | |
| F | ☐ | Warning Resolution | Date _____ | |

Exhibit 1B

THREE

G7E-XLO-864417-22

**Federal Bureau of Investigation**
Performance Management System - Special Agent
Performance Appraisal Report Evaluation Page

Case 2:03-cv-02682-MCE-KJM   Document 131   Filed 10/15/07   Page 61 of 70

[SEE INSTRUCTIONS ON REVERSE]

| 1. | Payroll Name of Employee | 2. | Social Security Number |
|---|---|---|---|
| | LAU LOK T. | | 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 |

3.   Critical Element # __1__ as noted on the Plan.       3a.   Title and/or brief summary of element:

Conduct Investigations

4.   Rating level:
- [X] Exceptional *
- [ ] Superior
- [ ] Fully Successful

- [ ] Minimally Acceptable *
- [ ] Unacceptable *
  *See attached Narrative Page.

3.   Critical Element # __2__ as noted on the Plan.       3a.   Title and/or brief summary of element:

Report Information

4.   Rating level:
- [ ] Exceptional *
- [X] Superior
- [ ] Fully Successful

- [ ] Minimally Acceptable *
- [ ] Unacceptable *
  *See attached Narrative Page.

3.   Critical Element # _____ as noted on the Plan.       3a.   Title and/or brief summary of element:

4.   Rating level:
- [ ] Exceptional *
- [ ] Superior
- [ ] Fully Successful

- [ ] Minimally Acceptable *
- [ ] Unacceptable *
  *See attached Narrative Page.

3.   Critical Element # _____ as noted on the Plan.       3a.   Title and/or brief summary of element:

4.   Rating level:
- [ ] Exceptional *
- [ ] Superior
- [ ] Fully Successful

- [ ] Minimally Acceptable *
- [ ] Unacceptable *
  *See attached Narrative Page.

5.   Initials of Employee

4|11|9|
Date

Federal Bureau of Investigation
Performance Management System - Special Agent
Performance Appraisal Report - Narrative Page

Case 2:03-cv-02682-MCE-KJM   Document 131   Filed 10/25/07   Page 62 of 70

[SEE INSTRUCTIONS ON REVERSE]

1. Payroll Name of Employee

   LAU LOK T.

2. Social Security Number

   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

3. Critical Element # ___1___.    (Include specific examples of positive/negative performance.)

       SA LAU continues working in an undercover capacity in a complex, sensitive investigation of a major criteria country diplomatic establishment.  He has succeeded in becoming a trusted confidant of numerous subjects of investigations and has also penetrated the "inner circle" of the subject community.  As a result, he obtains singular and sensitive information of investigative value in a timely manner.  SA LAU also provided valuable, insightful assessments and analyses of the information obtained.  SA LAU also shows a keen awareness of areas of potential investigative interest and aggressively develops his contacts with the subjects in furtherance of the objectives of the investigation.  SA LAU has also been instrumental in developing and formulating a scenario for bringing this successful operation to a conclusion.

4. Initials of Employee

Date  4 | 11 | 91

**Federal Bureau of Investigation**
Performance Management System - Special Agent
**Performance Appraisal Report - Narrative Page**

[SEE INSTRUCTIONS ON REVERSE]

| 1. Payroll Name of Employee | 2. Social Security Number |
|---|---|
| LAU LOK T. | 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 |

3.  Critical Element # __2__.   (Include specific examples of positive/negative performance.)

    SA LAU gives thorough and extremely detailed oral briefings to his contact agent on a regular basis.  SA LAU's oral presentation of the facts and information is clear, concise and shows that he has a thorough command of the investigative priorities of the undercover operation.  SA LAU's in-depth, detailed written reports concerning his undercover activities have continued to show improvement.

4.  Initials of Employee

Date  4/11/91



**DEPARTMENT OF
POLICE**

# CITY OF SACRAMENTO
### CALIFORNIA

October 13, 1992
Ref: 10-43

HALL OF JUSTICE
813 SIXTH STREET
SACRAMENTO, CA
95814-2495

PH 916-264-5121

JERRY V. FINNEY
INTERIM CHIEF
OF POLICE

Richard H. Ross
Special Agent in Charge
Federal Bureau of Investigation
P. O. Box 13130
Sacramento, CA 95813

Dear Mr. Ross:

Recently we had the good fortune to work with two of your agents in the investigation of a difficult gambling case.

Agent Lok Lau was able to use his bilingual skills and his training to enter an illegal gambling den operated by Chinese speaking Vietnamese.   He obtained the necessary information to arrest the operators.

Agent ████████ provided an additional officer safety factor by monitoring the transmissions from Agent Lau for threats in Vietnamese.

Agent Lau's ability to penetrate the gambling operation on his first attempt assisted the Sacramento Police Department in closing down the operation and returning the neighborhood to the people who live there.   The illegal gambling operation had resulted in loan sharking, extortions, gang activities and assaults.

It is without reservation that I commend Agents Lau and Pham for their assistance in the investigation of this case.  I look forward to the continued good relations between our two agencies.

Sincerely,

*Jerry V. Finney*

Jerry V. Finney
Interim Chief of Police

*Exhibit 2*

*Good work*
*is bottom-line*
*if good*
*returns - Nice job*

JVF:kf

*cc CASE
FILE*

67-HQ-86441

SEARCHED _____ INDEXED _____
SERIALIZED __ FILED __

OCT 19 1992

FBI — SACRAMENTO

Immigration and Naturalization Service
*Western Regional Office*

P.O. Box 30080
Laguna Niguel, CA 92607-0080

February 5, 1993

Don Pierce
Supervisory Special Agent
Federal Bureau of Investigation
Sacramento, CA

via telefax:  (916) 481-9110

Dear Mr. Pierce:

I wish to take this opportunity to thank you again for the services of Special Agent George Lau, who assisted my intelligence team in the debriefing and property search of selected PRC aliens brought into the U.S. illegally on the M/V Manyoshi Maru.  SA Lau's language skills and organized crime expertise was of considerable help to my office.   Potential confidential informants were identified with SA Lau's assistance.  His expert evaluation of their potential was of considerable help in making preliminary evaluation of their likely success.

I look forward to an opportunity to work with SA Lau again at some point in the future.  Once again, thank you for allowing him to assist my office.

DAVID L. WHITT
Supervisory Special Agent
Office of Intelligence
Western Region

*Exhibit 3.*

1-281-E-0
1-67-LOK LAU

SAC
LAU
SS# Shields

P.O. Box 30080
Laguna Niguel, CA 92607-0080

October 15, 1993

Paul Shields
Supervisory Special Agent
Federal Bureau of Investigation
P.O. Box 13130
Sacramento, CA 95813

Dear Paul:

I want to thank you again for all of the assistance that your office and Special Agent George Lau have provided the Immigration and Naturalization Service relative to the Chinese alien smuggling problem. I have enclosed a certificate of appreciation from myself, and Michael Anderholt, Western Region Supervisory Special Agent for the Anti-Smuggling Program, for George. Please present it for us at an appropriate occasion, and thank George on our behalf. If there is anything I can do for you here at the region, please do not hesitate to call.

DAVID L. WHITT
Supervisory Special Agent
Intelligence

Enclosure

Presented to
SA Lau

Exhibit 3

67-HQ-864417-51



# U.S. Department of Justice

## U. S. IMMIGRATION & NATURALIZATION SERVICE

### REGIONAL ANTI-SMUGGLING/INTELLIGENCE

Presents this

## Certificate of Appreciation

To

# SA George Lau

For

*Outstanding Contributions in the field of Anti-Smuggling Law Enforcement.*

_____
October 1, 1993
DATE

Louis M Andrhut
Regional Program Manager
Anti-Smuggling

David A. White
Regional Program Manager
Intelligence







