LAW OFFICES OF GARY W. GORSKI
8549 Nephi Way
Fair Oaks, CA  95628
Telephone:	(916) 965-6800
Facsimile:	(916) 965-6801
usrugby@pacbell.net
www.gwgorski.com
GARY W. GORSKI - CBN:  166526
Attorney for Plaintiff

Co-Counsel
DANIEL M. KARALASH - SBN: 176422
(916) 787-1234
(916) 787-0267

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID K. MEHL; LOK T. LAU; FRANK FLORES<br>　　　　　Plaintiffs,<br><br>vs.<br><br>LOU BLANAS, individually and in his official capacity as SHERIFF OF COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO; BILL LOCKYER Attorney General, State of California; RANDI ROSSI, State Firearms Director and Custodian of Records.<br>　　　　　Defendants | CASE NO.: CIV S 03 2682 MCE/KJM<br><br>**PLAINTIFFS' ADDITIONAL MATERIAL FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND <u>COUNTER MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 78-230(e)</u>**<br><br>Date: November 16, 2007<br>Time: 9:00 a.m.<br>Ctrm: 3<br>Judge: Honorable Morrison C. England, Jr. |

| | | |
|---|---|---|
| 1 | 1. The Sacramento County Sheriff's Department's has a standard process for the submission and review of Carry Concealed Weapon ("CCW") permit applications, the issuance or denial of permits, and the process for an applicant to appeal the initial denial of an application. | 1.      Disputed. See AMF 1-144 Twomey Decl. ¶1-147; Deposition Exhibits 1, 1a, 2, 3, 4, 5, 6; Plaintiffs' additional Exhibits D through P, and Exhibits Blanas deposition, Blanas Depo. 41:5-14, 43:16-19, 63:14-67:1, 68:10-69:4, 83:2-84:24, 46:7-16, 47:9-48:25, 55:11-18, 50:7-12, 50:24-51:5, 70:17-71:5, 88:6-8,71:7:12, 88:6-8, 68:10-69:2, 71:12-17, 88:6-9, 72:16, 88:6-8, 83:2-84:24, 89:1-90:11, 74:21-25, 83:2-84:24, 92:3-6, 83:2-84:24, 75:1-2, 76:2-7, 91:1-3, 76:8-14, 76:15-23, 91:22-25, 83:2-84:24, 86:8-14, Blanas Depo. 68:10-69:2, 76:15-23, 77:8-9, 83:2-84:24, 84:21-85:12, 77:13-78:1, 91:2, 77:16-78:1, 91:2, 23:20-25, 24:4-9, 26:19-20, 68:10-69:2, 69:10-13, 69:23-70:4, 83:2-84:24, 86:21-4, 88:2-20, 18:6-14; 21:2-15, 87:19-23, 18:6-14, 21:2-15, 24:4-9, 76:17-23, 18:6-14, 21:2-15, 24:4-9, 23:20-23, 67:9, 70:9-16, 63:14-67:1, 25:17-25, 26:23-25, 18:6-14, 31:9-33:12, 29:14-19. |
| 2 | 2. This process, which had been in place for many years, and was in place during the time Plaintiffs Mehl and Lau applied to the department for CCW permits in 2002-2004. | 2.      Disputed. See response to **ONE** above, pertaining to unwritten policy and how that policy is implemented, of how CCWs are actually issued whereby campaign contributors have more access to obtaining CCWs then other citizens who do not contribute. |
| 3 | 3. The CCW permit application process includes an initial review of the applications submitted to the Special Investigations and Intelligence Bureau ("SIIB") of the Sheriff's Department, by the Detective assigned to SIIB. | 3.      Disputed. See response to **ONE** above, |
| 4 | 4. When an application is received by SIIB, the standard practice of the Sheriff's Department is for the Detective to review the application, run a criminal records check on the applicant, and if additional information is needed to complete the application, to contact the applicant either by telephone call or correspondence to obtain any additional information if necessary. | 4.      Disputed.  See response to **ONE** above, |
| | | 5.      Disputed.  See response to **ONE** above, |
| 5 | 5. Once an application was complete, the application package is submitted to a three-person committee for review and determination of approval or denial. | 6.      Disputed.  See response to **ONE** above, |
| | | 7.      Disputed. See response to **ONE** above, |
| | | 8.      Disputed.  See response to **ONE** |

| | | |
|---|---|---|
| 6. The reviewing committee was comprised of three persons (which at no time included the sitting Sheriff), who reviewed application packages submitted by individuals who wanted to obtain a permit to carry a concealed weapon. | | above, |
| | 9. | Disputed.   See response to **ONE** above, |
| | 10. | Disputed.  See response to **ONE** above, |
| 7. Generally the committee is comprised of two Captains and a Chief Deputy. | 11. | Disputed.   See response to **ONE** above, |
| | 12. | Disputed. See response to **ONE** above, |
| | 13. | Disputed.   See response to **ONE** above, |
| 8. If an application is approved upon committee review, the applicant is notified by mail, and requested to submit fingerprints for a Department of Justice ("DOJ") clearance. | 14. | Disputed.  See response to **ONE** above, |
| | 15. | Disputed.   See response to **ONE** above, |
| | 16. | Disputed.   See response to **ONE** above, |
| | 17. | Disputed.  See response to **ONE** above, |
| 9. Once clearance by the DOJ is received, the applicant is also required to submit proof to SIIB that he has qualified with his weapon(s) at an approved shooting range. | 18. | Disputed.  See response to **ONE** above, |
| | 19. | Disputed.   See response to **ONE** above, |
| | 20. | Disputed. See response to **ONE** above |
| | 20. 21. | Disputed. Disputed. See response to **ONE** above |
| 10. If all parameters are met, a permit is then issued by the Department. | 22. | Disputed.  Disputed. See response to **ONE** above |
| | 23. | Disputed.  Disputed. See response to **ONE** above |
| | 24. | Disputed.   See response to **ONE** above |
| | 25. | Disputed.   See response to **ONE** above |
| 11. If an application is denied by the committee, the applicant is notified by mail of the denial and also informed that the denial may be appealed. | 26. | Disputed. See response to **ONE** above |
| | 27. | Disputed.  See response to **ONE** above |
| | 28. | Disputed.  See response to **ONE** above |
| | 29. | Disputed.  See response to **ONE** above |
| 12. Upon appeal, an applicant may submit additional information to the officer handling appeals. | 30. | Disputed.  See response to **ONE** above |
| | 31. | Disputed.   See response to **ONE** above |
| | 32. | Disputed.   See response to **ONE** above |
| | 33. | Disputed.  See response to **ONE** |

3.

13. This appeals officer is not a member of the three-person committee, but an administrative officer assigned to conduct these appeals as a part of his duties.

14. The appeals officer reviews all materials in the original application as well as any additional information submitted by the applicant on appeal.

15. A personal interview with the applicant is also conducted by the appeals officer.

16. After an independent review of all the information received, the appeals officer makes a separate determination of whether to grant or deny a CCW permit to the applicant.

17. The applicant is thereafter notified by mail of the appeals officer's decision.

18. Neither Sheriff Blanas nor Sheriff Craig requested any special consideration for the issuance of a permit to any individual by the Evaluation Committee, never attended the meetings during which the permits were evaluated, nor provided any information to committee Members or reviewing staff concerning whether any applicant underevaluation by the Committee was a campaign contributor, friend, or business associate of the Sheriff.

19. In reviewing applications for CCW permits, the only issue the Committee considered was whether appropriate grounds existed pursuant to which the Department would, in its discretion and pursuant to the California Penal Code, issue a CCW permit to the applicant.

20. Plaintiff David K. Mehl submitted his CCW permit application in July of 2002.

21. His application was reviewed pursuant to the standard practice of the Department as described above.

22. Mr. Mehl's application was incomplete as it did not include a statement from him of his justification for the permit as is required by the California Penal Code.

23. There was no statement from Mr. Mehl describing the reasons why he felt he needed

above
34.   Disputed.  See response to **ONE** above
35.   Disputed, see AMF 1-144
36.   Disputed, see AMF 1-144
37.   Disputed, see AMF 1-144
38.   Disputed, see AMF 1-144
39.   Disputed, see AMF 1-144
40.   Disputed, see AMF 1-144
41.   Disputed, see AMF 1-144
42.   Disputed, see AMF 1-144
43.   Disputed, see AMF 1-144
44.   Disputed, see AMF 1-144
45.   Disputed, see AMF 1-144
46.   Disputed, see AMF 1-144
47.   Disputed, see AMF 1-144
48.   Disputed, see AMF 1-144
49.   Disputed, see AMF 1-144
50.   Disputed, see AMF 1-144
51.   Disputed, see AMF 1-144
52.   Disputed, see AMF 1-144
53.   Disputed, see AMF 1-144
54.   Disputed, see AMF 1-144
55.   Disputed, see AMF 1-144
56.   Disputed, see AMF 1-144
57.   Disputed, see AMF 1-144
58.   Disputed, see AMF 1-144
59.   Disputed, see AMF 1-144
60.   Disputed, see AMF 1-144
61.   Disputed, see AMF 1-144
62.   Disputed, see AMF 1-144
63.   Disputed, see AMF 1-144
64.   Disputed, see AMF 1-144
65.   Disputed, see AMF 1-144
66.   Disputed, see AMF 1-144
67.   Disputed, see AMF 1-144
68.   Disputed, see AMF 1-144
69.   Disputed, see AMF 1-144
70.   Disputed, see AMF 1-144
71.   Disputed, see AMF 1-144
72.   Disputed, see AMF 1-144
73.   Disputed, see AMF 1-144
74.   Disputed, see AMF 1-144
75.   Disputed, see AMF 1-144
76.   Disputed, see AMF 1-144
77.   Disputed, see AMF 1-144
78.   Disputed, see AMF 1-144
79.   Disputed, see AMF 1-144
80.   Disputed, see AMF 1-144
81.   Disputed, see AMF 1-144
82.   Disputed, see AMF 1-144
83.   Disputed, see AMF 1-144
84.   Disputed, see AMF 1-144
85.   Disputed, see AMF 1-144
86.   Disputed, see AMF 1-144
87.   Disputed, see AMF 1-144

| | |
|---|---|
| a permit to carry a concealed weapon. | 88.   Disputed, see AMF 1-144 |
| | 89.   Disputed, see AMF 1-144 |
| 24. The policy of the Sheriff's Department consistent with the requirements of the California Penal Code, is that applicants provide information explaining why they feel they need a license to carry a concealed weapon. | 90.   Disputed, see AMF 1-144 |
| | 91.   Disputed, see AMF 1-144 |
| | 92.   Disputed, see AMF 1-144 |
| | 93.   Disputed, see AMF 1-144 |
| | 94.   Disputed, see AMF 1-144 |
| | 95.   Disputed, see AMF 1-144 |

25. Mr. Mehl's application did not have this information and so it was sent back to him to complete and return.

26. After the application was sent back to Mr. Mehl, Mr. Mehl still did not provide information to the Department regarding his justification for requesting the permit.

27. Initially his application was returned to him with a simple request to complete the application and return it to the Department.

28. Mr. Mehl then sent two letters to the Department declining to fill out the portion of the application which calls for the justification for the permit, as he felt that was not consistent with the form instructions that come with the application package.

29. Mr. Mehl in his letters explained that he felt that Part 7 under the caption of "Investigator's Notes" was to be filled out by the Department upon interviewing him, and that he was not required, per the instructions to fill out that portion of the application.

30. In response to those letters, On August 1, 2002, Chief Denham wrote to Mr. Mehl asking that he provide his justification for issuance of the CCW permit, and agreed to waive the filing fee.

31. Chief Denham informed Mr. Mehl that the Department's practice was to require that the applicant provide in writing with the application package, a statement describing why the individual wanted a CCW permit.

32. Chief Denham told Mr. Mehl that if he would provide that information that the application would be considered.

33. Even after being requested by correspondence in 2002 to provide his justification for issuance of the CCW permit,

1  Mr. Mehl never did so.

2  34. No response from Mr. Mehl was received by the Department following Chief
3  Denham's letter of August 1, 2002.

4  35. Mr. Mehl's never completed his application by providing statements to the
5  department regarding his justification for the permit.

6
   36. He never provided any evidence or
7  factual information at all as to whether he was threatened, needed to carry a gun for
8  self-defense, or any other information.

9  37. Consequently, no information was available upon which the Department could
10 evaluate the application.

11 38. Without proper information the department had no choice but to deny the
12 application.

13 39. That was the reason, and the only reason, the application was denied in 2002.

14
   40. Mr. Mehl then re-submitted the same
15 application to the Department in 2003, again without any statement of his justification for
16 the permit.

17 41. Mr. Mehl never conveyed to the Department or the Evaluation Committee
18 hisreasons for requesting a CCW permit.

19 42. Mr. Mehl's application was therefore incomplete, and was denied on that basis.

20
   43. Plaintiff Mehl does not believe he was
21 denied a CCW License on account of his race or national origin.

22
   44. Lok T. Lau submitted his CCW permit
23 application to the Sheriff's Department in August of 2003.

24
   45. His application was reviewed by
25 Detective Stephen Bray pursuant to the standard practice of the Department as
26 described above.

27 46. Mr. Lau disclosed in his application and attachments that he had a pending lawsuit
28 against his former employer, the FBI.

6.

47. Mr. Lau also disclosed that he had been arrested for shoplifting twice, and that he was currently being treated for Post Traumatic Stress Disorder and Depression.

48. Mr. Lau's application was submitted to the Evaluation Committee, which at the time was comprised of Captain Bill Kelly, Captain James Cooper and Chief David Lind.

49. The Committee was informed by detective Steve Bray of Mr. Lau's two arrests, his lawsuit against his employer, and also the fact that Mr. Lau did not discuss any specific personal threats to his safety.

50. The committee reviewed all the materials presented by Mr. Lau in support of his application.

51. In addition, the committee reviewed Mr. Lau's criminal background along with the entire application file.

52. The Committee denied Mr. Lau's application, and as a result he was sent a letter on October 28, 2003, informing him of that denial, as well as informing him of his option to appeal the Committee's decision.

53. A unanimous determination was made to deny his application based upon the many issues raised in his application file as described above.

54. The reasons included his involuntary termination from the FBI, his two convictions for shoplifting, as well as his ongoing treatment for Post Traumatic Stress Disorder and Depression.

55. All three members of the committee agreed that it was inappropriate to issue Mr. Lau a concealed weapons permit based upon the information in his file.

56. In about January of 2004, an appeal was filed by Mr. Lau of the initial denial of his application by the review committee.

57. Chief C. Scott Harris, Jr., received Lok Lau's appeal of the denial of his application for a CCW permit.

58. Chief Harris reviewed Mr. Lau's original

1 application and the documents and correspondence submitted by Mr. Lau along
2 with his appeal.

3 59. It was Chief Harris' practice not to discuss an appeal with the Committee who
4 had denied the permit, but to provide an independent review of the applicant's file.

5
60. In addition, Chief Harris would not
6 consult with others in the Department regarding any appeal which he was
7 handling.

8 61. In any review of a denial, there were times when the individual reviewing the
9 appeals would over-rule the committee and grant the application, and other times when
10 they would uphold a denial of an application.

11
62. After Chief Harris' review of an appeals
12 file, he would make arrangements to personally meet with an appeals applicant,
13 and he did so with Mr. Lau.

14 63. Chief Harris met with Mr. Lau in his office at 711 G Street to discuss his appeal
15 in about the end of January or beginning of February of 2004.

16
64. Mr. Lau presented as unusually nervous,
17 drowsy, overly suspicious, and he also appeared to be somewhat paranoid.

18
65. When individuals who have been
19 honorably retired or otherwise separated from a Federal or State law enforcement
20 agency, such as the FBI, their employer, upon request from the former employee,
21 provides a letter recommending that the former agent be issued a CCW permit.

22
66. Chief Harris asked Mr. Lau in that
23 meeting why his previous employer, the FBI, had not supplied a letter approving his
24 application for a CCW permit, as is customary for former law enforcement
25 applicants.

26 67. In this case, the FBI did not provide the letter, and Mr. Lau had no explanation as to
27 why they did not.

28 68. When asked why he felt he needed a CCW permit, Mr. Lau replied that he was

8.

concerned that there were still people around from his former days serving undercover for the FBI who would do him harm.

69. Chief Harris confirmed with Mr. Lau that he was continuing to be treated for Post Traumatic Stress Disorder and Depression, as he had stated in his application, and that he was on various medications as a part of that treatment.

70. As a result of Chief Harris' personal interview of Mr. Lau and the totality of his application package, Chief Harris determined that although there could have been factors in years past which may have made Mr. Lau vulnerable, there was no current threat to this safety.

71. In addition, within Mr. Lau's application package, there was a letter from his former employer, the FBI, which indicated that the FBI had no knowledge or information indicating that Mr. Lau was under any threat due to his past employment activities with the FBI.

72. Based upon the totality of the circumstances from the review of Mr. Lau's application package, including his discharge from the FBI, the absence of a letter from his former employer approving the issuance of a CCW permit, his shoplifting arrests and convictions, his lying to his employer regarding those arrests, the letter from the department of Justice/FBI regarding no threats to the safety of Mr. Lau from his previous employment, and Mr. Lau's general presentation and behavior at our meeting, as well as his on-going treatment and medications for psychiatric disorders, Mr. Lau's appeal was denied.

73. According to Mr. Lau, at the time he applied for a CCW permit he was mentally disabled from depression, post traumatic stress disorder, sleep apnea, and was unable to work.

74. In addition, Mr. Lau testified that at the time he applied for a CCW permit he as under the care of a doctor for depression, posttraumatic stress disorder, and sleep apnea, he was prescribed an antidepressant and anxiety medication, Fluoxetine.

75. Chief Harris sent him a letter informing him of the denial on February 4, 2004.

76. Chief Harris did not discuss Mr. Lau's application with anyone in the Sheriff's Department, but made an independent review.

77. Further, in reviewing Mr. Lau's appeal, Chief Harris did not know whether or not Mr. Lau had any relationship with Sheriff Blanas, as a campaign contributor or otherwise.

78. In deciding Mr. Lau's appeal, as with every applicant appeal, an individual assessment was made as to whether there existed appropriate grounds for him to carry concealed weapon.

79. During Sheriff Blanas' tenure as sheriff of Sacramento County, he had no knowledge of or involvement in the applications for CCW permits of Plaintiffs Lok T. Lau and David Mehl, and first heard of these applicants at the time of this lawsuit.

80. While Sheriff Blanas was in office from 1999 through July of 2006, and had the authority by virtue of California Penal Code §12050 to issue CCW permits, he was approached by many personal friends and individuals who had contributed to his election campaign asking him to issue them CCW permits.

81. Sheriff Blanas informed the individual that he would not approve them for a CCW permit and/or that they needed to show justification for the permit and proceed through the normal application process established by the Department for the issuance of those permits.

82. In addition, during Sheriff Blanas' tenure, 229 applications for CCW permits for individuals who did not contribute to his campaign, were granted and issued CCW permits.

83. Election campaign contributions was not a factor in the determination of the issuance of a CCW permit by the Sacramento county Sheriff's Department or by the sheriff.

84. During the time Lou Blanas was chief

10.

Deputy for the Sacramento Sheriff's Department and served on the evaluations committee for the issuance of CCW permits, as well as during the time he was undersheriff, he never approved the issuance of, issued, or authorized the issuance of a CCW permit to any individual based upon their contribution to his or any other individual's political campaign, or due to any personal, financial or familial relationship with the applicant.

85. The process in effect while Lou Blanas was Sheriff was developed and established by Sheriff Craig in about 1996 or 1997 through input from a 8-person Citizen Advisory Committee which included members from the community as well as Sheriff's Department Staff.

86. The application procedure was designed to operate with initial review of the application by a SIIB Detective, followed by review and approval or denial by a 3-person Sheriff's Department evaluation committee, which would not include the Sheriff.

87. At the time Mr. Lau applied for his CCW permit, he was suffering from Post Traumatic Stress Disorder and major depression which affected his judgment.

88. In addition, as a result of his arrests for shoplifting, the FBI stripped Mr. Lau of his security clearance.

89. As a result of his suffering from sleep apnea while employed by the FBI, the FBI took away Mr. Lau's gun.

90. At the time he applied for a CCW permit, Mr. Lau informed the Sheriff's Department that his gun had been taken away from him and his security clearance stripped by the FBI.

91. Mr. Lau confirmed that neither during his application process nor during his appeal did he ever speak with Sheriff Blanas.

92. Even though Mr. Mehl was told that his application was incomplete and was requested by the Sheriff's Department to do so, he never provided any information justifying a need to carry a

1 | concealed weapon.

2 | 93. Mr. Mehl has no personal information that the denial of his application for a CCW permit was because he did not contribute to a Sheriff's political campaign.

94. Mr. Mehl also has no personal information or knowledge of the identity of anyone who received a CCW license in exchange for a campaign contribution.

95. Each and every permit issued or authorized to be issued by Lou Blanas at anytime, including the time during which he was Sheriff of the County of Sacramento and held the authority to issue CCW permits, was based upon the establishment of good cause as set forth in the California Penal Code and the criteria and policies of the Sacramento County Sheriff's Department.

DATED:        November 2, 2007            Respectfully submitted,
                                          LAW OFFICES OF GARY W. GORSKI

                                           /s/ Gary W. Gorski
                                          GARY W. GORSKI,
                                          Attorney for Plaintiffs