LAW OFFICES OF GARY W. GORSKI
8549 Nephi Way
Fair Oaks, CA 95628
Telephone:     (916) 965-6800
Facsimile:      (916) 965-6801
usrugby@pacbell.net
www.gwgorski.com
GARY W. GORSKI - CBN: 166526
Attorney for Plaintiff

Co-Counsel
DANIEL M. KARALASH - SBN: 176422
(916) 787-1234
(916) 787-0267

THE UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID K. MEHL; LOK T. LAU; FRANK FLORES<br><br>          Plaintiffs,<br><br>vs.<br><br>LOU BLANAS, individually and in his official capacity as SHERIFF OF COUNTY OF SACRAMENTO; COUNTY OF SACRAMENTO, SHERIFF'S DEPARTMENT; COUNTY OF SACRAMENTO; BILL LOCKYER Attorney General, State of California; RANDI ROSSI, State Firearms Director and Custodian of Records.<br>          Defendants | CASE NO.: CIV S 03 2682 MCE/KJM<br><br>**PLAINTIFFS' ADDITIONAL MATERIAL FACTS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND COUNTER MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 78-230(e)**<br><br>Date: December 6, 2007<br>Time: 9:00 a.m.<br>Ctrm: 3<br>Judge: Honorable Morrison C. England, Jr. |

ADDITIONAL MATERIAL FACTS

DAVID MEHL

1.    On each of Plaintiff Mehl's applications, Sections 6, 7, and 8 must be completed in the presence of an official of the licensing agency.  Mehl Decl. ¶ 5, 7, 9-13; Twomey Decl. ¶s 123, 124, 217; Declaration of Stephen F. Cotta, Docket 129-9, pages 4 through 32; Pl. Exh. "B", Wong Depo . 17:12-25 thru 18:1-8

2.    Sections 6 and 8 require a witness from the Sheriff's Department to be present when the application is signed.  Mehl Decl. ¶ 5, 7, 9-13; Twomey Decl. ¶s 123, 124, 217; Declaration of Stephen F. Cotta, Docket 129-9, pages 4 through 32**;** Pl. Exh. "B", Wong

1    Depo . 17:12-25 thru 18:1-8.

2    3.    Section 7 is reserved to the Defendants' "investigator" to fill out during or after an

3    interview with Dave Mehl.  Mehl Decl. ¶ 5, 7, 9-13; Twomey Decl. ¶s 123, 124, 217;

4    Declaration of Stephen F. Cotta, Docket 129-9, pages 4 through 32.  See Twomey

5    Exhibit "E", Page: 30, form letter to applicants in 2005;  Pl. Exh. "B", Wong Depo .

6    17:12-25 thru 18:1-8.

7    4.    Plaintiff Mehl was correct in not filling out Section 7, as CCW applicants are not to

8    complete section 7, because that section is filled out by an "investigator" of the

9    Department during or after an interview.  Mehl Decl. ¶ 5-18; Twomey Decl. ¶s 123, 124,

10    217;  Pl. Exh. "B", Wong Depo . 17:12-25 thru 18:1-8.

11    5.    Plaintiff Mehl's application was never processed by Defendants even though Defendants

12    accepted his money to process his two applications.  Mehl Decl. ¶ 5-18;  Pl. Exh. "B",

13    Wong Depo . 17:12-25 thru 18:1-8; Twomey Decl. ¶s 123, 124, 217.

14    6.    Plaintiff Mehl correctly submitted his application, and Defendants failed to take any

15    action determining whether Plaintiff Mehl had sufficient "good cause" for issuance of a

16    CCW.  Mehl Decl. ¶ 5-18; Twomey Decl. ¶s 123, 124, 217; Pl. Exh. "B", Wong Depo .

17    17:12-19:11.

18    7.    At about the time Plaintiff Mehl submitted his second CCW application in 2003,

19    Attorney Rothery had submitted his first of three consecutive CCW applications to

20    Defendants.  Mehl Decl. ¶ 5; Twomey Decl. ¶s ; Rothery Decl. 2-19.

21    8.    Regardless as to whether Plaintiff Mehl filled out Section 7 of the CCW application, or

22    filed an appeal, his CCW application would still have been denied, just as James

23    Rothery's application was denied each and every time.  Mehl Decl. ¶ 2-13; Twomey

24    Decl. ¶s 162, 265-270, 273, 277, 298, 313; Rothery Decl. ¶s 2-19.

25    9.    In fact, there were CCW applications that Defendants approved even though section 7,

26    page 13 was left blank, and leaving sections blank was not all that unusual because the

27    instructions were very specific to leave certain sections blank as an investigator was to

28    fill those in, or was to be done in the presence of an investigator.  Twomey Decl. ¶s 62,

123, 124, 217; Declaration of Gary W. Gorski, Paragraph 8, Exhibit "F" (**From here on in, all citations to Gorski Declaration exhibits shall be referred to as "Exhibit", "Exh." or "Pl. Exh."; Twomey Declaration exhibits shall always be identified as "Twomey Exhibit"**); Pl. Exh. "B", Wong Depo . 17:12-19:11.

LOK LAU

10. Plaintiff Lau's CCW application established both non-prima facie good cause and prima facie good cause for issuance of a CCW. Lau Decl. ¶ 3-23; Twomey Decl. ¶s 128-156.

11. Plaintiff Lau was advised by Defendants that his CCW application was denied because he had not provided "convincing" evidence of an "immediate danger". Lau Decl. ¶ 3-23; Twomey Decl. ¶s 140, 128-156, 223.

12. In fact, the only reason provided to Plaintiff Lau, to be raised on appeal, was that he did not provide "convincing evidence" of an "immediate danger". Lau Decl. **12, 13, 18, 19**, generally 3-23; Twomey Decl. ¶s 140, 128-156, 223.

13. At no time was Plaintiff Lau ever informed that there were "too many issues", or for that matter, any other issue other than "immediate danger" being the thrust of the reason for denial of his CCW application, and this a consistent pattern why CCW applications are denied as a pretext for other reasons. Lau Decl. ¶ **12, 13, 18, 19**, generally 3-23; Twomey Decl. ¶s 52, 140, 128-156, 223.

FACTS RELEVANT TO ALL PLAINTIFFS

14. Defendant Blanas was recruited by then Sheriff Glen Craig commencing in 1987, to raise money for Craig's three election campaigns for Sheriff. In return, Craig hired Defendant Blanas into a Captain's slot without even taking a Captain's exam, by-passing approximately 1600 sworn deputies opportunities to advance in the Sheriff's Department. From their, Defendant Blanas advanced upon to Undersheriff faster than any other officer in the Department, even though Defendant Blanas was not even qualified for the rank of Sergeant with the Sacramento City Police Department in that he failed the exam two, "maybe" three times. In fact, one of the first assignments for Defendant Blanas was supervising CCW issuance. Blanas Depo. 8:1-16:23, 31:9-39:24.

3.

15. Proper foundation was laid to qualify Mr. Twomey as an expert, as stated in his declaration. Twomey Decl. ¶s 1-52.

16. Mr. Twomey is uniquely qualified to render an opinion as to whether CCWs are issued by Defendants with capriciousness. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

17. Mr. Twomey is uniquely qualified to render an opinion as to whether CCWs are issued by Defendants with arbitrariness. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

18. Mr. Twomey is uniquely qualified to render an opinion as to whether CCWs are issued by Defendants with plain arbitrariness. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

19. Mr. Twomey is uniquely qualified to render an opinion as to whether CCWs are issued by Defendants with an intent to treat some more people more favorable just because they are closely connected to the Defendant Blanas. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

20. Mr. Twomey is uniquely qualified to render an opinion as to whether CCWs are issued by Defendants with an intent to treat some more people more favorable just because they made campaign contributions to Defendant Blanas. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

21. Defendants do not have a qualified expert to rebut the opinion of Mr. Twomey, and therefore the entire declaration of Mr. Twomey is irrefutable. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

22. Mr. Twomey is an expert in performing administrative and internal affairs investigations, and analyzing the effect of various County of Sacramento Sheriff Department practices on both the department and residents of Sacramento County, including the issuance of CCWs. Twomey Decl. ¶s 1-52, 53, 111, 112, 113, 177.

23. Mr. Twomey's background, training, and experience enabled him to perform this analysis using the same or similar types of methods that he has employed when conducting Departmental reviews, administrative investigations, divisional investigations and criminal investigations for the Sacramento Sheriff's department. Twomey Decl. ¶s 1-52.

24. Mr. Twomey is an expert on law enforcement management policy, procedures and in

4.

particular, on conducting administrative investigations and administrative reviews. Moreover, and particularly pertinent to this case, the aforementioned expertise is very specific to the Sacramento County Sheriff's department. Most importantly, Mr. Twomey is an expert in determining if the Sacramento County Sheriff's Department has a set policy or criteria as to what constitutes "good cause" or lack thereof in determining who should or should not be issued a CCW. Twomey Decl. ¶s 50, and generally 1-52, 53, 111, 112, 113, 177.

25. Mr. Twomey is an expert in evaluating and processing large amounts of Sacramento County Sheriff's Department data, facts, and information, and rendering an opinion to a reasonable degree of certainty as to what the evidence establishes regarding the existence or lack thereof of a constituted departmental policy by custom or practice. In this case, he is a qualified expert on evaluating and processing large amounts of CCW data, facts, and information, and then rendering an opinion to a degree of reasonable certainty as to: 1) what the policy criteria is for both prima facie and non-prima facie "good cause" issuance of a CCW, and 2) whether the "good cause" criteria was applied equally to all applicants, and 3) if not applied equally, why was it not applied equally. Twomey Decl. ¶s 51, generally 1-52, 53, 111, 112, 113, 177.

26. Mr. Twomey is qualified to render an expert opinion as to the ultimate reason or reasons why Plaintiffs Lau and Mehl were denied CCWs. Twomey Decl. ¶s 52, generally 1-51, 53, 111, 112, 113, 177.

27. Many of the CCW applications were approved whereby the applicant's stated justification was "carries large sums of cash," or "self defense", or working in high crime areas, most notably the applications contained in Twomey Exhibit "D", for example:

    (a)    Edwin Gerber. Twomey Exhibit "D", Page 1, 7.

    (b)    Ernest Martini. Twomey Exhibit "D", Page 11.

    (c)    Ben Upton. Twomey Exhibit "D", Page 13.

    (d)    Jack Kimmel. Twomey Exhibit "D", Page 19.

    (e)    Roland Lewis. Twomey Exhibit "H".

1  Twomey Decl. ¶s 147, see also 162, 265-270, 273, 277, 298, 313.

2  28.    According to Defendants, the following "approved" CCW applications present facts

3         constituting Non-Prima Facie Good Cause for issuance of a CCW: 1.) "Self Defense of

4         family, business 2 Private Property    Have had a ccw since 1948.   The last to men that I

5         apprehended, one was on parol the other had a $1000 dollar warrant. since 1948

6         conditions have not improved." Gorski Decl. Plaintiff's Exhibit "N", Bate # D_02501.

7         This application, and other similar justifications stated in applications are also contained

8         in Twomey Exhibit "D, G, and H". 2.) "Physician taking call.  Need to go out at all

9         hours." Gorski Decl. Plaintiff's Exhibit "N", Bate # D_02589.  This application, and

10        other similar justifications stated in applications are also contained in Twomey Exhibit

11        "D, G, and H".  3.)  I have had a permit for about 20 years while both employed and

12        retired.  Basically for self protection while doing vast amount of traveling in California.

13        This also included camping and fishing in remote areas."  Gorski Decl. Plaintiff's Exhibit

14        "N", Bate # D_02519. This application, and other similar justifications stated in

15        applications are also contained in Twomey Exhibit "D, G, and H".  4.)  Jack Kimmel, of

16        Kimmel Construction, Inc. "Self Defense" Gorski Decl. Plaintiff's Exhibit "N", Bate #

17        D_02653-02654. This application, and other similar justifications stated in applications

18        are also contained in Twomey Exhibit "D, G, and H".  5.)  Roland Lewis, issued July 22,

19        1995, "Self Protection Bus. Related"  Gorski Decl. Plaintiff's Exhibit "N", Bate #

20        D_02676; Twomey Exhibit "H".  6.)  David Mastagni, Lawyer, "course of business."

21        Gorski Decl. Plaintiff's Exhibit "N", Bate # 02693-02694.  This application, and other

22        similar justifications stated in applications are also contained in Twomey Exhibit "D, G,

23        and H". 7.)  John Valensin, "Self Protection overseeing trespass & game violations on

24        large ranches.  Threatning [sic] calls from people whom Ive [sic] had arrested. &

25        vandalizing large equipment on property.  Gorski Decl. Plaintiff's Exhibit "N", Bate # D

26        02889.  This application, and other similar justifications stated in applications are also

27        contained in Twomey Exhibit "D, G, and H". Twomey Decl. ¶ 134.

28  29.    In fact, there are numerous campaign supporters of Defendant Blanas who received

CCWs and presented no statements or evidence indicating an "immediate" threat or danger, and nonetheless received CCWs. Twomey Decl. ¶s 196-260, see also, 162, 265-270, 273, 277, 298, 313.

30.  In fact, Mr. Twomey outlines perfectly all substantial facts and evidence supporting his opinions. Twomey Decl. ¶s 1-313.

31.  Mr. Twomey's opinions are based upon sound and proven methodologies. Twomey Decl. ¶s 1-313.

32.  Mr. Twomey's methodology is founded upon sound investigative and management principals and practices, unique to law enforcement managers conducting administrative and internal affairs investigations. Twomey Decl. ¶s 1-52.

33.  Mr. Twomey is an expert, qualified to render the following opinions in this case, and these opinions are based upon sound and proven methodology, principles and practices. Twomey Decl. ¶s 1-313.

34.  The County of Sacramento Sheriff's Department and then Sheriff Blanas, and now Sheriff McGinniss have absolutely no policy or criteria as to whom is issued a CCW for non-prima facie good cause applications; at best, it is random and capricious with approval more likely to be given to well-known employers, campaign contributors, or those with Departmental affiliations. Twomey Decl. ¶s 162, and 1-52, 53, 111, 112, 113, 177.

35.  Defendants CCW permit process is wrought with capriciousness and arbitrariness, and continues till this day. Twomey Decl. ¶s **265**, 1-52, 53, 162, 265-270, 273, 277, 298, 313

36.  Plaintiffs were denied an equal and fair opportunity to receive a CCW as compared to those who received CCWs. Twomey Decl. ¶s **266**, 1-52, 162, 265-270, 273, 277, 298, 313.

37.  Plaintiffs were denied equal opportunity under the law to receive a CCW from Defendants. Twomey Decl. ¶s **267**, 162, 265-270, 273, 277, 298, 313.

38.  selective issuance of CCWs to those with close affiliation to the Sheriff (i.e. elected official) is a systemic problem that is inherent in a system whereby money influences

7.

1    those with the "power" to issue CCWs, which in this case, is the Sheriff of Sacramento
2    County. Twomey Decl. ¶s **268,** 162, 265-270, 273, 277, 298, 313.

3    39.   What the evidence in Mr. Twomey's declaration demonstrates is that those who have
4          access to the Sheriff indeed have a very high probability of receiving a CCW, if they
5          apply for one, as compared to a very low probability for those who do not have access to
6          the Sheriff, nor contributed to his campaign, such Plaintiffs. Twomey Decl. ¶s 269, 162,
7          265-270, 273, 277, 298, 313.

8    40.   Plaintiffs Mehl and Lau did not receive equal treatment for the review, if any, of their
9          CCW applications since they did not contribute or have any relationship to then Sheriff
10         Blanas or then Undersheriff McGinniss.  I can state to a degree of reasonable certainty
11         that both Plaintiffs CCW applications were denied simply because they were not known
12         contributors to Sheriff Blanas' political campaigns for Sheriff, and his Undersheriff's
13         quest to become sheriff.  This is what the evidence shows. Twomey Decl. ¶s 270, 162,
14         265-270, 273, 277, 298, 313.

15   41.   The prima facie good cause standard lacks any merit or support, and creates a separate
16         privileged class of citizens who are rewarded for their affiliation with law enforcement.
17         Twomey Decl. ¶s 273, 162, 265-270, 273, 277, 298, 313.

18   42.   The CCW policy of the Sacramento County Sheriff's Department, as both written and
19         unwritten, is applied in a discriminatory, unfair, biased, prejudicial, and capricious
20         manner, and that there is obviously extreme favoritism towards two distinct groups, to
21         the exclusion of all other citizens of Sacramento County: 1) those with political influence
22         and ties (e.g. campaign contributors and other who can contact the Sheriff directly and
23         receive CCWs, Badges, and I.D.s) and, 2) "active or honorably separated member of the
24         criminal justice system directly responsible for the investigation, arrest, incarceration,
25         prosecution or imposition of sentence on criminal offenders" are also provided
26         preferential treatment (i.e. the prima facie good cause standard for issuance) Twomey
27         Decl. ¶s 277, 162, 265-270, 273, 277, 298, 313.

28   43.   the CCW approval process is not a process at all, but consists of a committee of political

8.

| | |
|---|---|
| 1 | appointments who serve at the pleasure of the Sheriff.  It is reasonable to infer that these |
| 2 | appointees are also in direct contact with the Sheriff's campaign contributors, or have |
| 3 | knowledge of who they are. Twomey Decl. ¶s 298, 162, 265-270, 273, 277, 298, 313. |
| 4 | 44.  Amber Wong first started working for the Sheriff's department as a Records Clerk in |
| 5 | October of 2001, when Lou Blanas was still Sheriff.  Pl. Exh. "B", Wong. 7:14-21. |
| 6 | 45.  Wong handles "all incoming applications, process[es] them, to where they need to go for |
| 7 | the reviewing detective." And "keep[s] the files updated as far as the renewals of the |
| 8 | permits, making sure proper documentation is maintained within the files." Pl. Exh. "B", |
| 9 | Wong Depo . 10:10-17. |
| 10 | 46.  The people having access to the cabinets where the CCWs were kept were the members |
| 11 | of the Special Investigations Unit; some of whom were, Lieutenant Tim Sheehan, |
| 12 | Sergeant Mike McKeal, Detective R.L. Davis, Detective Mike Wright, Detective Santos |
| 13 | Ramos.  Pl. Exh. "B", Wong Depo . 11:21-25 thru 12:1-4. |
| 14 | 47.  The Special Investigations Unit is now referred to as the SIIB or Special Investigations |
| 15 | Intelligence Bureau, and those in the SIIB were the "paper processor" (Wong's position) |
| 16 | and the reviewing detectives.  Pl. Exh. "B", Wong Depo . 12:18-25 thru 13:1-4 |
| 17 | 48.  The location of the office for the processing of CCWs was "across the hall and diagonal" |
| 18 | from the sheriff's office; in other words "directly across from the sheriff's office".  This |
| 19 | only changed "two months ago [from the date the deposition was taken]".  Pl. Exh. "B", |
| 20 | Wong Depo . 13:8-24. |
| 21 | 49.  Wong was told how to handle the CCWs "between phone calls with Department of |
| 22 | Justice and Detective Steve Bray" who told her to "Have them filled out and process it as |
| 23 | you will." Pl. Exh. "B", Wong Depo . 15:10-21 |
| 24 | 50.  Wong is familiar with the Section Seven on the CCW application form; a standard |
| 25 | application for CCWs from the DOJ.  DOJ told her that it is a standard statewide form. |
| 26 | Pl. Exh. "B", Wong Depo . 14:20-25 thru 15:1-6 |
| 27 | 51.  Bates Stamps on the documents D 03424 through D 03430 are stipulated as being Wong's |
| 28 | Bates Stamps.  Pl. Exh. "B", Wong Depo . 16: 7-12 |

52. Wong was shown a Section Seven where it "says, interview, investigations interview notes" and she said she saw it. Pl. Exh. "B", Wong Depo . 16:18-20

53. Wong said she had read the instructions on the CCW application which said that the investigator will contact the application to fill it out and that the applicant is not to fill it out. Pl. Exh. "B", Wong Depo . 17:1-7

54. Wong said that there are times where people left Section 7 blank on the CCW application when they were submitting it. When it was not filled out she would try to contact the applicant to gather the information and then fill the form out for them. However, this procedure "briefly" changed; though she cannot recall the exact date. Pl. Exh. "B", Wong Depo . 17:12-25 thru 18:1-8

55. At the time the procedure "briefly" changed, in order to "coincide with the instructions of the application", SIIB followed the "actual application instructions versus what we were doing and had the applicant come in, sit down with [Wong] where [Wong] completes page 11 with them face-to-face, as well as page 12". Wong would hand write the notes in, and currently follows this same procedure. Pl. Exh. "B", Wong Depo . 18:15-25

56. 'Currently' the application procedure would be that the applicant would come in to hand the application to Wong, at which time she would fill it out with the applicant standing in front of her. Pl. Exh. "B", Wong Depo . 19:4-11

57. If the public telephones Wong and asks her, they can find out the specific times during which they may apply for a CCW. Pl. Exh. "B", Wong Depo . 19:18-20

58. Other than the FBI and Ms. Pappone, only members of the SIIB would "occasionally" ask for a certain CCW application on a person. Pl. Exh. "B", Wong Depo . 25:4-9

59. Since the change to the process, the "Investigator's Notes" portion of the Section Seven of the CCW application, wherein the application is explained or justified, is filled out by the "reviewing detective" who contacts the applicant "via phone". Pl. Exh. "B", Wong Depo . 26:7-17

60. Prior to the "changes" noted previously it is "fair to say there was an ambiguity as to how the application was to be filled out and by whom". Pl. Exh. "B", Wong Depo . 26:21-25

1    thru 27:1-3

2    61.    There was no written policy or any instructions regarding implementing the "change" in

3           policy for filling out the forms. Pl. Exh. "B", Wong Depo . 27:22-25

4    62.    Prior to, or in and around November 2003, the general procedure for someone applying

5           for a CCW, was that they would turn in a fully completed application with their filing

6           fee. If the application was incomplete Wong would try and contact the person. If she

7           was unable to do so she would mail the form back with a letter telling them to fill out the

8           form completely. It would not have been considered proper procedure to place a 'sticky'

9           on the area which required further information. Pl. Exh. "B", Wong Depo . 29:7-25 thru

10          31:1-10

11   63.    After the applicant had submitted an application, Wong would put a cover letter on it to

12          go before a detective. The cover letter would show the applicant's name and occupation,

13          and the reviewing committee member's signature. Pl. Exh. "B", Wong Depo . 31:17-21

14   64.    The document Bate stamped D 030423 is a cover letter.   Pl. Exh. "B", Wong Depo .

15          31:22-25

16   65.    Wong's personal understanding was that after the detective received the application, he

17          would contact the individual if there were further questions regarding the application. Pl.

18          Exh. "B", Wong Depo . 33:18-25 thru 34:1-5

19   66.    There were three names listed as the committee members, in addition to an appellate

20          decision maker. Pl. Exh. "B", Wong Depo . 34:6-12

21   67.    Though she doesn't take any notes, Wong is present at the committee meeting. This

22          committee tries to meet every six to eight weeks. Pl. Exh. "B", Wong Depo . 35:24-25

23          thru 36: 1-14.

24   68.    Wong has heard of applications that were approved wherein the applicant asked for a

25          CCW "just for self defense". Pl. Exh. "B", Wong Depo . 40:9-23.

26   69.    An application has to go through the committee to be approved. Wong has the files

27          saying approved and denied. Pl. Exh. "B", Wong Depo . 41:10-13. However, Defendant

28          Blanas has bypassed this so-called procedure, and provided CCWs to those whom he

                                            11.

| | |
|---|---|
| 1 | personally knows - directly, without any committee overseeing the application. Blanas |
| 2 | Depo. 46:7-16, 47:9-48:25, 55:11-18, 63:14-67:7. |
| 3 | 70. Wong knows of "only two" applications which were approved with a CLETS check, |
| 4 | criminal just background check, or a range card. They were originally issued as |
| 5 | "emergency first while we could get the DOJ stuff done". Pl. Exh. "B", Wong Depo . |
| 6 | 44:4-11 |
| 7 | 71. When shown her, Wong recognized **Plaintiff's Exhibit 2**, pages six of 10 and she |
| 8 | recognized the name Pasquale Montesano, as being from one of her previous files. Wong |
| 9 | said that this file "expired 10/22/06." Pl. Exh. "B", Wong Depo . 51:8-21 |
| 10 | 72. Sergeant McKeal told Wong to start processing an "emergency" CCW on Edwin Gerber. |
| 11 | This would effectively give Gerber a 90 day CCW permit prior to his standard two-year |
| 12 | permit. Gerber did not have a range card indicating a required 64 hour class, nor did he |
| 13 | have a CLETS criminal history background check. Pl. Exh. "B", Wong Depo . 62:7-25 |
| 14 | thru 63:1-10; see also Exhibit E. |
| 15 | 73. Ed Gerber did "eventually get a range card". Pl. Exh. "B", Wong Depo . 65:19-21; see |
| 16 | also Exhibit E. |
| 17 | 74. A CCW Permit Evaluation was marked as Plaintiff's Exhibit 5. Pl. Exh. "B", Wong |
| 18 | Depo . 67:1-14 |
| 19 | 75. Wong identified Exhibit 5 as one that she had created a file for. It is Wong's handwriting |
| 20 | where it says "Edwin". The application says "Occupation, business owner". Pl. Exh. |
| 21 | "B", Wong Depo . 79:22-25 thru 80:1-20 |
| 22 | 76. On the first page of Exhibit Five, Bates stamped D 03548, Wong did not make the check |
| 23 | mark approving the application. Wong recognized the handwriting used to make the |
| 24 | approving signature as being that of Sheriff Blanas. Wong personally typed in, |
| 25 | "Approved by Sheriff Blanas", after being told to do so by Sergeant Mike McKeal. To |
| 26 | her knowledge, Wong believes that Sheriff Blanas told Sergeant Mike McKeal that |
| 27 | Gerber's application had been approved. Pl. Exh. "B", Wong Depo . 83:11 thru 85:7 |
| 28 | 77. Wong could not recall the emergency regarding Gerber's emergency issuance of a CCW |

12.

permit. The handwriting on the permit stating, "Carry large sums of cash ... expensive jewelry" was already filled out when Wong saw the form. Wong was simply told that Gerber had a "need" for the permit. Pl. Exh. "B", Wong Depo . 85:22 thru 86:20; 62:7-25 thru 63:1-10; see also Exhibit E.

78. The committee had never met on Gerber's application. From Wong's understanding of the committee's approval process, Gerber's criteria for approval was not "typical criteria for approval." However, once the application had been approved by the Sheriff it doesn't go to the committee. Pl. Exh. "B", Wong Depo . 87:6-22; 85:22 thru 86:20; 62:7-25 thru 63:1-10; see also Exhibit E; Blanas Depo. 46:7-16, 47:9-48:25, 55:11-18, 63:14-67:7.

79. Wong believes that "there are a few" other applications which have also bypassed the committee and been approved only by the Sheriff. Pl. Exh. "B", Wong Depo .87:23 thru 88:1

80. Some of the forms on the applications have never been filled out. They might have been added on after the fact, after the committee had already met, if it was an older file. There could be many reasons. Pl. Exh. "B", Wong Depo . 88:19-22

81. For a CCW renewal it was up to the reviewing detective to decide whether the individual should continue "carrying". The committee would not meet on a renewal of a permit. Pl. Exh. "B", Wong Depo . 89:7-16

82. Wong believes that it is fair to say that the renewal process is treated differently than a new applicant process. Pl. Exh. "B", Wong Depo . 96:24 thru 97:2

83. Wong has never seen a renewal come back disapproved. Pl. Exh. "B", Wong Depo . 98:5-7

84. When Edwin Gerber's application was approved by Sheriff Blanas there was no committee meeting on the matter. The initial application indicates it was July of 2006. The committee did not meet until March of 2007. Pl. Exh. "B", Wong Depo . 98:16-25; Blanas Depo. 46:7-16, 47:9-48:25, 55:11-18, 63:14-67:7.

85. When the committee met to discuss Gerber's permit, Wong was present and said that the committee did not see a valid reason for him to be carrying a permit. Pl. Exh. "B", Wong

13.

1    Depo . 101:7-12

2    86.    Wong created the Gerber approval document and Blanas signature was placed on it

3           afterwards.  Pl. Exh. "B", Wong Depo . 105:3-8.

4    87.    A few other times Wong remembers that Sheriff Blanas had personally approved

5           applications but can't recall the names offhand.    Pl. Exh. "B", Wong Depo . 105:16-25.

6    88.    Wong remembers a few emergency permits had been approved by the Sheriff.  No one

7           else had approved any other emergency CCW permits.  Pl. Exh. "B", Wong Depo .

8           106:6-18

9    89.    McAtee  is a detective in the Sacramento Sheriff office, and has been a deputy sheriff for

10          over eight years beginning in 1988.  Pl. Exh. "C", McAtee Depo. 7:10-22

11   90.    McAtee graduated from Sacramento State University and admittedly has good writing

12          skills.  At the Sheriff's Academy emphasis was placed upon "include[ing] all facts that

13          you feel are relevant and try[ing] to be as accurate as possible." Pl. Exh. "C", McAtee

14          Depo. 8:5-19

15   91.    In order to take accurate notes "you don't write [your report] while [the subject is]

16          talking."  You always take notes in the field so that you can type up your report when you

17          return to the office.  Pl. Exh. "C", McAtee Depo. 9:20 thru 10:3

18   92.    When taking statements from witnesses in the field with notes, McAtee does not ever

19          electronically record the statements. Pl. Exh. "C", McAtee Depo. 13:22 thru 14:17

20   93.    Between 1989 to the time of the deposition, McAtee states that an estimate of 3600 crime

21          reports, or 200 a year, would be a low estimate of the number of crime reports that he has

22          filled out. Pl. Exh. "C", McAtee Depo. 15:10-25

23   94.    When recording information in a police report, McAtee is accurate and never fabricates

24          any statements.  To the best of his ability, his field notes are based upon when the

25          information is still fresh in his mind and transcribed to the police report as soon as

26          possible.  Pl. Exh. "C", McAtee Depo. 16:14 thru 18:6

27   95.    McAtee believes the deposition regards "concealed weapons permits that somebody

28          wanted to get".  He understands that he is just a witness.  Pl. Exh. "C", McAtee Depo.

14.

| | |
|---|---|
| 1 | 19:17 thru 20:9 |
| 2 | 96. McAtee remembers taking a report of James Colafrancesco.  He remembers this because |
| 3 | "It's an odd name and I have a really good memory." Pl. Exh. "C", McAtee Depo. |
| 4 | 20:15-21 |
| 5 | 97. McAtee is shows Plaintiff's Exhibit Four which he reviews with his attorney.  He had last |
| 6 | seen the report sometime in 1994.  Pl. Exh. "C", McAtee Depo. 21:13-22 |
| 7 | 98. Reviewing the report refreshed McAtee's recollection "a little bit".  McAtee had filled out |
| 8 | only the portions of the Exhibit with his own name on them. Pl. Exh. "C", McAtee Depo. |
| 9 | 22:13-19 |
| 10 | 99. McAtee identifies the first Bates stamp on the Exhibt as D-01500, and the very lay Bates |
| 11 | stamp as D-01535. Pl. Exh. "C", McAtee Depo. 22:20 thru 23:5 |
| 12 | 100. McAtee identifies Exhibit Four and reads the report number as 94-076998. Depo. 23:6 |
| 13 | thru 24:4 |
| 14 | 101. McAtee says that a crime report number is assigned within at least one day of the crime |
| 15 | itself, and describes the practice for assigning a crime report number.  Pl. Exh. "C", |
| 16 | McAtee Depo. 24:10-20 |
| 17 | 102. McAtee says that the underlying crime for the report number for Exhibit Four is "Rude or |
| 18 | threatening display of a firearm." Pl. Exh. "C", McAtee Depo. 25:6-8 |
| 19 | 103. One of the pages prepared by McAtee was Bate stamped D-1501.  Pl. Exh. "C", McAtee |
| 20 | Depo. 25:9-12 |
| 21 | 104. Deputy Morgan filled out the first page of Exhibit Four, the one with a sticker on it, or |
| 22 | Exhibit One.  Pl. Exh. "C", McAtee Depo. 25:16-17 |
| 23 | 105. McAtee identified the pages he filled out as Bate stamps D-01501, D-1508, D-1509, |
| 24 | D-01510, D-01511, D-01512, D-01513, D-01514, D-01515, D-01516, D-01517, |
| 25 | D-01518, D-01519, D-01520, D-01521, and D-01524. These pages are all part of the |
| 26 | crime report and not an addendum. Pl. Exh. "C", McAtee Depo. 25:12 thru 26:13 |
| 27 | 106. The first page of Exhibit Four, or the face sheet is like a synopsis.  The facts of the case |
| 28 | are supplemental pages.  Pl. Exh. "C", McAtee Depo. 17:1-4 |

107. Exhibit Four refreshed McAtee's recollection "a little bit" regarding the events as they transpired on the evening described within the Exhibit. Pl. Exh. "C", McAtee Depo. 29:5-8

108. McAtee and his partner were dispatched to a guy brandishing a gun at Brother Oliver's prior to 2 a.m. Upon arriving they were told that after a brief argument with somebody the guy was brandishing a gun and was currently in the bathroom. When McAtee and his partner went to the bathroom they saw the guy with a Colt .45 on his hip and took the gun from him and escorted him out to the car. Pl. Exh. "C", McAtee Depo. 29:11-22

109. The person McAtee arrested "talked a lot" and at one point or another told McAtee that he had a concealed weapons permit for his firearm. Pl. Exh. "C", McAtee Depo. 29:24 thru 30:10

110. The arrestee was intoxicated and his ability to understand simple instructions and simple sentences was heavily impaired, with slurred speech. McAtee based his opinion that the arrestee was drunk on his knowledge of the objective signs of drunkenness and his expertise. The arrestee, now referred to in the deposition as Mr. Colafrancesco, asked McAtee several times if he was being arrested for urinating. Pl. Exh. "C", McAtee Depo. 31:1-18

111. The firearm was confiscated and McAtee does not know what happened to it. Pl. Exh. "C", McAtee Depo. 32:2-6

112. Colafrancesco was arrested for a California Penal Code violation of 417 on October 2nd, 1994. Pl. Exh. "C", McAtee Depo. 32:9-19

113. McAtee clarified that it was not he who arrested Colafrancesco, but that it was a citizen's arrest because it was for a misdemeanor and was not committed in McAtee's presence. Pl. Exh. "C", McAtee Depo. 33:5-12

114. Colafrancesco's brandishing of a firearm was coupled with a threat according to statements that were taken by McAtee. Pl. Exh. "C", McAtee Depo. 34:20-23

115. Colafrancesco was cited and released. Pl. Exh. "C", McAtee Depo. 34:21

116. Without reading the report, McAtee remembered Colafrancesco mentioning both Sheriff

16.

1    Blanas and Mo Bailey on several occasions. Pl. Exh. "C", McAtee Depo.38:6-10

2    117.    The report marked as **Exhibit Four** is an accurate reflection as to what Colafrancesco

3            said to McAtee because the notes taken by McAtee were contemporaneous and

4            immediately turned into Exhibit Four.  Pl. Exh. "C", McAtee Depo. 38:15-24

5    118.    McAtee went through Colafrancesco's wallet and recalled seeing an honorary deputy's ID

6            and badge and a concealed weapons permit.  Pl. Exh. "C", McAtee Depo. 39:21 thru 40:9

7    119.    McAtee felt that the detailed description from his report in Exhibit Four "would be far

8            more accurate than [his] memory."  Pl. Exh. "C", McAtee Depo. 41:14-21

9    120.    Brother Oliver's is at Madison and Manzanita just north of Madison.  It would be fair to

10           say that page D-01518 describes the events as McAtee perceived them on the early

11           morning hours of October 2nd, 1994.  Pl. Exh. "C", McAtee Depo. 42:15-22

12   121.    McAtee reiterates that what is recorded in the document marked as Exhibit Four is the

13           best evidence as to what happened as far as his actions and what he heard and saw on the

14           morning of October 2nd, 1994.  Pl. Exh. "C", McAtee Depo. 45:2-12

15   122.    McAtee reads Exhibit Four into the record verbatim as a prior recollection recorded,

16           corroborating that Colanfracesco admitted to obtaining a CCW and a Deputy Badge by

17           paying Campaign contributions to Defendant Blanas.  Pl. Exh. "C", McAtee Depo. 45:14

18           thru 62:14

19   123.    McAtee was reassigned to RCCC with the Sheriff's department within a week of filing

20           Exhibit Four, and thus, McAtee contacted someone at the sheriff's union regarding

21           disciplinary matters that were pending against him.  Pl. Exh. "C", McAtee Depo. 71:23

22           thru 72:6

23   124.    One of the issues raised by the his employer regarding disciplinary matters involved a

24           police report, but did not involve the accuracy of his reports, the formatting of his reports,

25           or the way he wrote reports.  It involved the time it took McAtee to complete his reports.

26           Pl. Exh. "C", McAtee Depo. 72:23 thru 74:15

27   125.    McAtee "felt that it was in the best interest of the public that [Colafrancesco] not have [a

28           CCW permit]." and recommended revocation of this permit in his report.  Pl. Exh. "C",

17.

1    McAtee Depo. 79:17 thru 80:4

2    126.    McAtee has an ID card signed by the sheriff that tells everyone that he is a peace offer.

3            McAtee described the ID card that Colafrancesco was carrying as "very similar" to his

4            own; using the words "very similar" twice.  Pl. Exh. "C", McAtee Depo. 80:16 thru 81:2

5    127.    The badge that Colafrancesco was carrying differ from McAtee's own only by having the

6            word "honorary" written on it in lieu of the badge number.  Pl. Exh. "C", McAtee Depo.

7            81:16-20

8    128.    McAtee said, "I know that when I first looked at [Colafrancesco's ID badge], it looked

9            like a legitimate law enforcement badge."  Pl. Exh. "C", McAtee Depo. 82:4-5

10   129.    McAtee again affirmed that upon first inspection Colafrancesco's ID badge looked like a

11           law enforcement credential.  Pl. Exh. "C", McAtee Depo. 83:3-7

12   130.    Out of all the arrests that he's made, people he's come into contact with, or crime reports

13           he's fill out, to the best of his recollection, the only person McAtee recalls having a CCW

14           was James Colafrancesco.  Pl. Exh. "C", McAtee Depo. 84:23 thru 85:5

15   131.    In 1994, McAtee remembers Mo Bailey as "a very popular person within the department.

16           I think most people know him." and believes he was a sergeant.  Pl. Exh. "C", McAtee

17           Depo. 85:19 thru 86:5

18   132.    Edwin Gerber owns what appears to be a million dollar vacation home in Reno with

19           Defendant Blanas (See Twomey Exhibit "K"), and contributes to his campaign under

20           Energetic Drywall (See Twomey Exhibit "J", Page: 171), which is reported in campaign

21           disclosure records under the penalty of perjury.  Gerber's individual contributions were

22           not reported as noted in the campaign records though Defendant Blanas testified that

23           Gerber personally donated money (there is always the possibility that Mr. Twomey

24           missed it, but he did review all of Blanas' campaign records several times, and never

25           once saw "Gerber's" name).  Defendant Blanas also personally approved Gerber's CCW

26           application; belying statements made by Defendant Blanas himself who testified that he

27           never interjected himself into the CCW proceedings.  Mr. Twomey found that though

28           Defendant's assertion was not true, having Defendant Blanas become personally involved

1  in the CCW approval process was an unusual 'honor' which Mr. Twomey noticed was

2  only given in instances where the applicant had been extremely generous to Defendant.

3  133.  Gerber stated in his justification that he carries large sums of cash and wears expensive

4  jewelry.  More specifically, "Carry large sums cash $4000-$5000 wear $45,000 watch +

5  rings - expensive jewelry". Twomey Exhibit "D", Page: 7.  Defendant Blanas personally

6  "approved" this so-called "verbal" application on July 26, 2007, even though a "written"

7  application was submitted on July 25, 2006.  Compare Twomey Exhibit "D", with the

8  dates on pages 1, 2, 3, and 10; Pl. Exh. "A", Blanas Depo. 46:7-16, 47:9-48:25, 55:11-18,

9  63:14-67:7; Pl. Exh. "1"; Pl. Exh. "B", Wong Depo . 87:6-22; 85:22 thru 86:20; 62:7-25

10  thru 63:1-10; see also Exhibit E; Pl. Exh. "A", Blanas Depo. 46:7-16, 47:9-48:25,

11  55:11-18, 63:14-67:7; Pl. Exh. 5; Pl. Exh. "B", Wong Depo Wong Depo . 79:22-25 thru

12  80:1-20, 83:11 thru 85:7. 61; Twomey Exhibit "J", Page: 171 (Energetic Painting and

13  Drywall, Inc.)

14  134.  Ernest Martini a.k.a. Ernest Martini contributed to Defendant Blanas's campaign, and

15  received a CCW for the following stated reason: "I routinely check on properties that are

16  located in high-crime areas throughout California."  Pl. Exh. "A", Blanas Depo.

17  83:2-84:24, 88:2-20; Twomey Exhibit "J", Page: 108 [Martini Associates Property

18  Management]; Twomey Exhibit "D", Page: 9-11; See Twomey Exhibit "I", Page: 5; see

19  also Bate Stamp #D 01694, D 01725, D 02012.

20  135.  Ben Upton a.k.a. Benjamin Upton, a contractor (Valley Painting at Twomey Exhibit "J",

21  Page: 82) in Elk Grove, contributed to Defendant Blanas's campaign and received a

22  CCW.  Twomey Exhibit "D", Page 12; Pl. Exh. 3, Pl. Exh. "A", Blanas Depo. 68:10-69:2,

23  76:15-23, 91:22-25; Twomey Exhibit "J", Page: 34 (Valley Painting), 113.   As noted on

24  Upton's CCW application, his business name is "Valley Painting", at and page 13 he

25  states that he "[has] not had a problem", [has] never had any incidents", and "**[has] never

26  been threatened**", which is all conclusive that there was no "immediate" threat or harm

27  for the issuance of his CCW.

28  136.  Jim Anderson a.k.a. James Anderson owner of Pacific Coast Building Products, Inc., is a

1    major contributor to Defendant Blanas' campaign by the way of "forgiven loans" [D

2    01807, 01796, 01647], and received a CCW commencing in 1994; his CCW application

3    is missing.  Pl. Exh. "A", Blanas Depo. 68:10-69:2, 77:8-9, 83:2-84:24, **84:21-85:12**; Pl.

4    Exh. 3; Twomey Exhibit "J", Page: 19, 37, 180.

5    137.    However, what is really important here is that a "Michael Gilmore" (issued 2003) and

6            "Richard Merri" (issued 1998) both have CCWs, and both just happen to work for

7            "Pacific Coast Building Products, Inc." which also just happens to be one of the major

8            campaign contributors to Defendant Blanas. Twomey Exhibit "D", Page: 15, 16.  In

9            particular, the only conclusion Mr. Twomey can draw from why both of these individuals

10           were issued CCWs was because they were employed by Anderson's company, since the

11           name of the company is the only common denominator, and no other information was

12           provided.  Again, here is a pattern of minimal information, no threat of immediate danger

13           as required, and the only common denominator is a business associated with a major

14           campaign contributor.

15   138.    Jack Kimmel contributed to Defendant Blanas's campaign, and received a CCW even

16           though on his application it said "self defense" and "self defense" is NEVER justification

17           for issuance of a CCW based upon Defendants purported criteria (i.e. written policy).

18           Campaign contributions were through Jack Kimmel Construction Company and

19           "Sacramento Rendering."  Pl. Exh. "A", Blanas Depo. 50:7-12, 50:24-51:5, 70:17-71:5,

20           88:6-8.  Twomey Exhibit "J", Page: 11, 58, 129 (Sacramento Rendering); Twomey

21           Exhibit "D", Page: 17-19.

22   139.    Likewise, Michael Koewler contributed to Defendant Blanas's campaign, and received a

23           CCW.  Pl. Exh. "A", Blanas Depo. 68:10-69:2, 71:12-17, 88:6-9.  Twomey Exhibit "J",

24           Page: 11, 107, 176   Like Jack Kimmel, he also is a business owner with Sacramento

25           Rendering, which contributes large amounts of money to Blanas (See Bate Stamps

26           D02071, 01898, 01660, etc.).  Twomey Exhibit "D", Page: 20-21.  Significantly at page

27           20, the word "other" is checked, in leu of "threats", "money", "late hours", "types of

28           work", "law enforcement."  As this was a pre-1999 form, its format is much less

sophisticated. However, what is important to note is that the CCW was issued "**PER SHERIFF CRAIG 06-10-97**". Twomey Exhibit "D", Page: 20. Then, somehow, at Twomey Exhibit "D", Page: 21, the State wide CCW application was used, and all the other pages are missing. Based upon Defendants' bate stamp numbers, these documents were not even grouped together, but just thrown into a random stack of thousands of other pages of other CCW applications.

140. Next, a Kurt Halverstadt was issued a CCW on 6/13/2003; his application was "**APPROVED FOR ISSUE UNDERSHERIFF JOHN MCGINNIS 6-13-03**", and as noted on the same page "Lou Blanas" was "Sheriff." Twomey Exhibit "D", Page: 22. As noted at Twomey Exhibit "D", Page: 30, Halverstadt's justification for a CCW was that he handles "assets of significant value" and the "high visibility of being part of The Sullivan Group" and that it is "a reasonable business precaution." See also, Twomey Exhibit I, Pages: 12-13. Again, no immediacy, and no specific threats. If the standard for approval is "a reasonable business precaution", then most business owners should be issued CCWs. However, the law is clear: one may have a firearm in their place of business, thus a CCW is not needed. What was immediately obvious to Mr. Twomey was that Tom Sullivan has a close line of communication with the Sheriff, and this cannot be disputed for Sheriff McGinniss himself appeared frequently on Tom Sullivan's program before Sullivan left for the national spotlight. Mr. Twomey has personal knowledge in that he knows Sheriff McGinniss, he recognizes his voice, and he listened to Sheriff McGinnis personally speak many times on Tom Sullivan's program. The three panel committee was completely bypassed - again, in similar fashion to Gerber and Koewler.

141. Twomey Exhibit "D", Pages 31-shows "John McGinniss" (Sheriff now) personally overruling the so-called three panel CCW committee by approving two almost identical applications principals (Fite and Halimi) of the business known as "Fite Development", "Fite Construction", or "Fite Properties, Inc." located on "Horn Road." Twomey Exhibit "J", Page: 54, 145, 173; Twomey Exhibit "D", Page: 33. The first thing that really

21.

1    caught Mr. Twomey's attention, besides McGinniss himself personally overruling his

2    own appointed committee and approving CCWs is that both of these applicants are

3    identified as members of the "SSD AERO SQUAD" right on the CCW evaluation cover

4    sheet.

5    142.  Mr. Twomey knows from his management experience that the County of Sacramento

6    Sheriff's Department started the "Air Support Bureau" in the late 1970s or early 1980s.

7    The helicopters are referred to as STAR units (Sheriff's Tactical Air Resource).

8    143.  This is significant because Mr. Twomey has been a member of the Sacramento Sheriff's

9    Department (SSD) for 32 years, retiring in July of 2004, and he has never heard of or

10   even seen any organizational chart for the SSD Aero Squad; short for the Sacramento

11   Sheriff's Department Aero Squadron.  Though he notes that the Sacramento County

12   Sheriff's Aero Squadron is purportedly located at 711 G Street and donated to Defendant

13   Blanas' campaign. Twomey Exhibit "J", Page: 14.   However, in 1999, Mr. Twomey was

14   a manager with the Department and no such organization ever existed at 711 G Street,

15   headquarters for his employer at the time. See Twomey Exhibit "J", Page: 14.  More

16   importantly, had Mr. Twomey known that a branch or department of government existed

17   that donated money to a political campaign, he would have immediately commenced an

18   IA investigation pursuant to the General Orders requiring him to report a suspected crime

19   or violation of law.

20   144.  What also really struck Mr. Twomey as suspicious, and maybe why David Fite's

21   application was originally denied was the fact that the evaluation form (Twomey Exhibit

22   "D", Page: 31, see also 33) states that Fite is "Retired."  But then, under the penalty of

23   perjury, Fite apparently states that "Applicant carries large amounts of cash from

24   business to the bank for deposit."  Mr. Twomey asked himself, "if Fite is retired, why is

25   he carrying cash from business to the bank?"  As a trained investigator, Mr. Twomey

26   would definitely question his application, and there should be notes explaining this very

27   inconsistent statement.  Instead, the Sheriff just approves the CCW with no investigation

28   from what Mr. Twomey can determine from the Department's own business records.

22.

145. Halami's evaluation form has him listed as a "real estate developer". Twomey Exhibit "D", Page: 37, 43; See Twomey Exhibit "I", Page: 7. If it is true that the three panel committee reviews just what is in the application and the justification for issuance, then how is it that the "CCW BRIEFING SUMMARY" prepared by Amber Wong contains facts that are not in the application. Pl. Exh. "B", Wong Depo . 31:17-41:13. For example, here, Halami's actual application provides the stated reason for a CCW is that he "**carries cash from business**." Twomey Exhibit "D", Page: 45. However, at Twomey Exhibit "D", Page: 39, Amber Wong writes "Applicant carries large amounts of cash home from the business located in Rancho Cordova. He also works late hours and feels vulnerable." [emphasis added] However, Halimi's real estate license has his business located in Carmichael, CA, not Rancho Cordova. See Twomey Exhibit "I", Page: 7. Since there are no notes or other documents in Halimi's file, where did this additional information come from?

146. In 2002, Richard Hill a.k.a. Dick Hill had his application approved by Undersheriff McGinniss after it was denied by the three member panel, and his Section 7 justification is blank. Twomey Exhibit "D", Page: 47-49, 57. However, someone else fills in that the "Applicant's permit has expired and he failed to renew in a timely manner. Applicant makes bank deposits for Lexus of Sacramento and responds to alarm calls for the business." Twomey Exhibit "D", Page: 50. Again, Richard Hill is another applicant associated with the owner of a company that contributes and that owner also has a CCW. Bob Frink HEAVILY contributed by way of forgiven loans to Defendant Blanas's campaign, and received a CCW, plus he is a "friend" of Defendant Blanas. Pl. Exh. "A", Blanas Depo. 83:2-84:24, 86:8-14; Twomey Exhibit "J", Page: 8, 19, 37, 96, 193 (RPM Management); Pl. Exh. "3"; Twomey Exhibit "O", D_01593. Robert Frink is also the owner of RPM management , which also just happens to employ Hill. See Twomey Exhibit "I", Page: 9, 10, 11 and compare with Twomey Exhibit "I", Page: 48, 49, 50, noting that RPM Management and Lexus of Sacramento are all operating out of Robert Frink's Madison Avenue address.

147. Ronald Yee, a dentist, contributed to Defendant Blanas's campaign, and received a CCW. Pl. Exh. "A", Blanas Depo. 83:2-84:24, 92:3-6; Twomey Exhibit "J", Page: 14, 83, 114; Twomey Exhibit "D", Page: 59-60. His stated reason is essentially that "there is a real possibility of encountering life threatening situations when out alone on the street or in my parking lot." By any stretch of interpretation, there was no stated immediate threat. Twomey Exhibit "D", Page: 60.

148. Both John and Steve Raptakis have CCWs, and John Raptakis contributed to Defendant Blanas's campaign under J. R. Painting & Waterproofing at Vintage Park Drive. See Twomey Exhibit "I", Page: 8; Twomey Exhibit "D", Page: 61, 62, 63, 64; Twomey Exhibit "J", Page: 39; Pl. Exh. "A", Blanas Depo. 68:10-69:2, 77:16-78:1, 91:2. Again, the justification for issuance was essential self defense from garden variety danger in "dangerous neighborhoods".

149. John Valensin contributed to Defendant Blanas's campaign, and received a CCW, and the reason for his application was defense of property from trespassers (it is illegal to use deadly force to protect property). Pl. Exh. "A", Blanas Depo. 18:6-14, 21:2-15, 24:4-9, 76:17-23; Pl. Exh. 2 and 3; Twomey Exhibit "D", Page: 65; Twomey Exhibit "J", Page: 36, 38, 113.

150. Ron Sellers contributed to Defendant Blanas's campaign, and received a CCW for what would constitute everyday dangers, not unusual to the average employer. Pl. Exh. "A", Blanas Depo. 18:6-14, 21:2-15, 24:4-9, 91:4-6; Twomey Exhibit "D", Page: 66-67; Twomey Exhibit "J", Page: 12, 38. 79. Here, all of Sellers' concerns involve dangers at work and at his residence; places where he is already legally allowed to arm himself without a CCW; as stated in the form letter of rejection to other CCW applicants. Likewise, Jack Sellers contributed to Defendant Blanas's campaign, and received a CCW. Pl. Exh. "A", Blanas Depo. 18:6-14, 21:2-15, 24:4-9. Steve Sellers contributed to Defendant Blanas's campaign, and received a CCW. Pl. Exh. "A", Blanas Depo. 18:6-14, 21:2-15, 24:4-9.

151. However, the application of Roman Thorntona is really interesting as he is the personal

assistant for Ron Sellers. Twomey Exhibit "D", Page: 68. Thorntona requested a CCW to guard Sellers, but Seller's can guard himself since he too has a CCW. Again, not only does the proprietor of a business who contributes heavily to the Sheriff obtain a CCW upon application, but those closely associated with this contributor are approved as well (i.e. Halami with Fite; Hill with Frink; Gilmore and Merri with Anderson; Koewler with Kimmel; and now Thorntona with Sellers, not to mention the other two Sellers as well; then there are the two Raptakis; and Halverstadt with Sullivan/McGinniss)

152. From there, it just goes on. Dave Baker, carpet business, contributed to Defendant Blanas's campaign, and received a CCW, and his application was "approved Chief Dan Lewis", and bypassing the so-called committee altogether with undocumented threats. Twomey Exhibit "D", Page: 76-78; Plaintiffs' Exhibit D. Pl. Exh. "A", Blanas Depo. 23:20-25, 24:4-9, 26:19-20, 68:10-69:2, 69:10-13. Twomey Exhibit "J", Page: 138.

153. Dr. Pasquale Montesano contributed to Defendant Blanas's campaign, and received a CCW for responding to emergencies "at late hours". Twomey Exhibit "D", Page: 79 [also, 83 is part of 79, they are out of order]; Pl. Exh. "A", Blanas Depo. 83:2-84:24, 89:11-90:11; Twomey Exhibit "J", Page: 61.

154. Chris Hansen, of Chris Hansen Insurance in Elk Grove, contributed to Defendant Blanas's campaign, and received a CCW in 1998, though the committee sheet says denied for "no compelling reason" and it was then subsequently approved as a "renewal" in 1999 - the only statement made being "personal safety due to my business" and he had a CCW in San Luis Obispo, CA. Twomey Exhibit "D", Page: 81, 82, 124. Pl. Exh. "A", Blanas Depo. 68:10-69:2, 69:23-70:4, 83:2-84:24, 86:21-4; Twomey Exhibit "J", Page: 23, 71, 167, 168.

155. John Christie employs Nanette Blanas (a woman whom Mr. Twomey knows to be Defendant Blanas' wife), and both of these individuals also work in the same office as Angelo Tsakopoulos (i.e. AKT Development) whose name and company contributes heavily to Defendant Blanas. See Twomey Exhibit "I", Page: 1-3. For example Twomey Exhibit "J", Page: 17, $25,000.00 "forgiven loan" with the same business address, and

this pattern is repeated throughout Defendant Blanas' campaign records. John Christie had his CCW approved in October of 1998, and the $25,000.00 loan was forgiven by 1/11/99. No other information is provided on Twomey Exhibit "D", Page: 84. However, at Twomey Exhibit "D", Page: 85, John Christie describes his place of employment as "Sunrise Liquors" on Greenback Lane, but his real estate license has him listed at 7700 College Town Drive, Suite 101, the same identical address and suite as Angelo Tsakopoulos. On the face of the application, and the only basis for approval, is "carry large amounts of cash to the bank three to four times a week. Also work at the above business often times late." Twomey Exhibit "D", Page: 85. It is also noted that 10 years prior, in "1988", he was denied a CCW, which also happens to be 10 years after he incorporated "Sunrise Liquors, Inc." on 4/7/1978. Twomey Exhibit "N". Likewise, John Christie's wife also applied for, and received a CCW for the same purported reason. Twomey Exhibit "D", Page: 88-89.

156. Chris Lee, an "attorney/farmer" contributed to Defendant Blanas's campaign, and received a CCW in 1996. Pl. Exh. "A", Blanas Depo. 68:10-69:2, 71:7:12, 88:6-8; Twomey Exhibit "D", Page: 92-93. Not only does Lee's application establish no "documented" threats, it is specifically stated in his application that he "lives in rural area of county - often confront trespassers on my ranch." Here, Lee's application makes clear that he wants to use deadly force to protect property. Twomey Exhibit "D", Page: 93.

157. James Grey contributed to Defendant Blanas's campaign, and received a CCW. Pl. Exh. "A", Blanas Depo. 83:2-84:24, 87:19-23. Twomey Exhibit "J", Page: 9, 26, 75, 93; See Twomey Exhibit "I", Page: 6; Twomey Exhibit "D", Page: 94. Again, no specific threats, just a generalized feeling of vulnerability, but more importantly, it was emphasized that there was the potential for bank managers to be kidnaped or extorted, with no specific threat towards him.

158. Hatim Shariff contributed to Defendant Blanas's campaign, and received a CCW for protection of business (i.e. Shariff Financial Corporation has three jewelry stores in Sacramento." Pl. Exh. "A", Blanas Depo. 68:10-69:2, 76:2-7, 91:1-3; Twomey Exhibit

"D", Page: 96-97.

159. Julie Rollofson contributed to Defendant Blanas's campaign, and received a CCW, plus her father Dr. Rollofson also donated to Defendant Blanas's campaign [this was established by Julie Rollofson listing her father as her employer on her CCW Application and Dr. Rollofson's address matches on the campaign records.] Twomey Exhibit "O", D_01563; Pl. Exh. "A", Blanas Depo. 68:10-69:2, 77:13-78:1, 91:2; Pl. Exh. 2; Twomey Exhibit "D", Page: 98-99; Twomey Exhibit "J". Most importantly, she was "denied" for "no compelling reason", but then it is written, "O.K. permit do amend review if status changes Chief B Roberts." Again, the so-called committee is overruled by a higher authority.

160. Alvin and Gary Ricci contributed to Defendant Blanas's campaign, and received a CCW, and the records were destroyed by SIB. Pl. Exh. "A", Blanas Depo. 68:10-69:2, 75:1-2; Pl. Exh. 2; Twomey Exhibit "J", Page: 20, 68, 86; Twomey Exhibit "D", Page: 100-102. The application merely mentions the name of Ricci's business, and that is it.

161. Kermit Schayltz, owner of Lucky Derby Casino, was issued a CCW in 1996 for "course of business - to and from bank." with only two members present on the three member review panel. Twomey Exhibit "J", Page: 28, 59, 76, 94, 151 (Point Walker, Inc. dba Lucky Derby Casino), 196; Twomey Exhibit "D", Page: 103-122. Interestingly, a person who has had a CCW since 1996, is suddenly denied in 2007 by McGinniss, apparently because Schayltz did not contribute to McGinniss' campaign. The important point is that this individual has been operating the same business for years, and is eventually denied a CCW for the same reason one was approved. At a minimum, this shows an arbitrary and capricious policy with absolutely no standard for the reviewing committee members to abide by. Then, for Gerry Harris, he has a CCW and no application was provided, and he too is believed to be affiliated with Lucky Derby. Twomey Exhibit "J", Page: 56, 194, 196 (Point Walker/Lucky Derby); Twomey Exhibit "O", D_01561.

162. Bill Myers, "the Padillas" (i.e. Alejandro, Anselmo, Greg, Jess, Michael a.k.a. Padilla Bail Bonds) contributed to Defendant Blanas's campaign, and received a CCW. Pl. Exh.

"A", Blanas Depo. 68:10-69:2, 74:21-25.  More importantly, here again, the "SSD Air Squadron" is named as the only justification for issuance in 1997.  Twomey Exhibit "D", Page: 123, 133; Twomey Exhibit "J", Page: 21, 78; Pl. Exh. 2 and 3.  One of the Padilla's states "self protection" with no immediate threats.  Twomey Exhibit "D", Page: 133.

163.    Dave Mastagni contributed to Defendant Blanas's campaign, and received a CCW in 1989 for "course of business".  Twomey Exhibit "D", Page: 134; Pl. Exh. "A", Blanas Depo. 68:10-69:2, 72:16, 88:6-8; Twomey Exhibit "J", Page: 40, 60, 109.  Mr. Twomey knows David Mastagni personally, has been to his office, and sought legal advice from him, and at no time did Mr. Twomey ever perceive that Mastagni was in danger working in his law office, nor was his office ever located in a high crime area.

164.    Bill Spurgin gave Defendant Blanas jewelry, donated to his campaign and received a CCW, and his CCW is a non-law enforcement CCW issued in 1996 and is still current.  Pl. Exh. "A", Blanas Depo. 68:10-69:2, 76:8-14.

165.    Joseph Mohamed, Asghar Mohamed, Ahmed, and John Mohamed were issued CCWs in 2001, 2005 respectively, and their files were purged, and Joseph is a very heavy contributor to Defendant Blanas.  Blanas Depo Exhibit 1, 2 and 3,  Twomey Exhibit "J", Page: 10, 12, 27; Twomey Exhibit "D", Page: 125-132.   Of particular interest is that he too is a real estate broker and property manager, collecting rents.  The application states: "My concealed weapon has provided me with a sense of security in these situations." (126) It is noted that basically no reason was provided for the others.

166.    Attorney John Virga contributed to Defendant Blanas's campaign, and received a CCW.  Pl. Exh. "A", Blanas Depo. 68:10-69:2, 76:15-23; Twomey Exhibit "J", Page: 57; Pl. Exh. 2, Twomey Exhibit "O", D_01574.

167.    Margaret A. Abrate of Capitol Steel, Co.  contributed to Defendant Blanas's campaign and received a CCW.  Twomey Exhibit "J", Page: 47, 70, 102, Twomey Exhibit "O", D_01609.

168.    John Morgan contributed to Defendant Blanas's campaign, and received a CCW.  Pl. Exh. "A", Blanas Depo. 83:2-84:24, 89:1-6.  Twomey Exhibit "J", Page: 28, 78, 109, Twomey

28.

1    Exhibit "O", D_01551.

2   169.  Jerry a.k.a. George Brannigan contributed to Defendant Blanas's campaign commencing

3         in 1995 or 1999, and received a CCW.  Pl. Exh. "A", Blanas Depo. 18:6-14; 21:2-15.

4         Twomey Exhibit "J", Page: 5, 19, 37, 95, Twomey Exhibit "O", D_01591.

5   170.  Jack Kearns a.k.a. John Kearns contributed to Defendant Blanas's campaign, and

6         received a Non-peace officer CCW.  Pl. Exh. "A", Blanas Depo. 67:9, 70:9-16, Twomey

7         Exhibit "O", D_01538.

8   171.  Bill Mosier contributed to Defendant Blanas's campaign, and received a CCW.  Pl. Exh.

9         "A", Blanas Depo. 25:17-25, 26:23-25; Twomey Exhibit "O", D_01596.

10  172.  A CCW was issued on 8/28/93 to Steve Beneto of Beneto Petroleum Products whom also

11        forgave a $15,000.00 loan to Defendant Blanas.  Twomey Exhibit "J", Page: 4, 19, 37,

12        95; Twomey Exhibit "O", D_01636.

13  173.  On 8/12/1998, Spencer Bole was issued a CCW and contributed to Defendant Blanas'

14        campaign in 1999. Twomey Exhibit "J", Page: 5, 50, 87.  Twomey Exhibit "O",

15        D_01636.

16  174.  John Manikas was issued a CCW October 1994, and contributed to Blanas' campaigns

17        under Color Core Incorporated and Five Star in 1999.  Twomey Exhibit "J", Page: 6, 23,

18        88, 92 [$25,000], 96, 108.  Twomey Exhibit "O", D_01604.

19  175.  Dave Commons was issued a CCW in 1996, and contributed to Blanas' campaigns.

20        Twomey Exhibit "J", Page: 23; Twomey Exhibit "O", D_01577.

21  176.  David S. Smith, Eagle Ridge Construction was issued a CCW October 1994, and

22        contributed to Blanas' campaigns.  Twomey Exhibit "J", Page: 24, 72, 104.  Twomey

23        Exhibit "O", D_0

24  177.  Ed Rincon was issued a CCW in 1997, and contributed to Blanas' campaigns.  Twomey

25        Exhibit "J", Page: 25, 53, 73.  Twomey Exhibit "O", D_01573.

26  178.  Doug Barkdull was issued a CCW, and contributed to Blanas' campaigns.  Twomey

27        Exhibit "J", Page: 49, 101; Twomey Exhibit "O", D_01609.

28  179.  Darrell Dettling was issued a CCW in 1994, and contributed to Blanas' campaign in

1   1999.  Twomey Exhibit "J", Page: 7, 24, 52, 72, 103, 170; Twomey Exhibit "O", D_

2   180.   Moreover, take Twomey Exhibit "J", Page: 115, this is a list of outstanding loans to

3          Defendant Blanas in the year 2001, and out of nine loans, two of which are by the same

4          individual under different companies (i.e. Manikas with Color Core and Five Star

5          Services), so there are only 8 individuals.  Of these eight, five have CCWs (Beneto,

6          Brannigan, Manikas, Cummings, and Frink), one indirectly employs Defendant Blanas'

7          wife (Angelo Tsakoploulos through Christie), and one sold a house to Defendant Blanas

8          and Gerber, who is a Co-owner and also just happens to have a CCW.  This is just an

9          example of what the volumes of documents show.  In fact, it is more likely than not that

10         on every page one will find at least one CCW permit holder who has contributed to

11         Defendant Blanas' campaign.  For instance, Twomey Exhibit "J", Page: 119, two out of

12         the three have CCWs (i.e. Beneto and Brannigan) and the third sold a house to Defendant

13         Blanas (i.e. Bardis) See Twomey Exhibit "K", Page: 1.  At Twomey Exhibit "J", Page:

14         120, four out of 5 have CCWs (Brannigan, Manikas under Color Core and Five Star, and

15         Frink).  Then, at Twomey Exhibit "J", Page: 121, three out of five have CCWs (Jack,

16         Ron, and Steve Sellers).  There is also a Manolakas that has a CCW and it is more likely

17         than not under a totality of circumstance that this person is related.  Then, Twomey

18         Exhibit "J", Page: 122, one of two individuals has a CCW (Valensin), and the other

19         (Tsakopoulos) indirectly employs Defendant Blanas' wife.

21   DATED:          November 2, 2007            Respectfully submitted,
                                                 LAW OFFICES OF GARY W. GORSKI

23                                                /s/ Gary W. Gorski
                                                 GARY W. GORSKI,
                                                 Attorney for Plaintiffs

30.