1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DAVID K. MEHL; LOK T. LAU;
     FRANK FLORES,
12                                      No. 2:03-cv-2682-MCE-KJM
              Plaintiffs,
13                                      MEMORANDUM AND ORDER
         v.
14
     LOU BLANAS, individually and
15   in his official capacity as
     SHERIFF OF COUNTY OF
16   SACRAMENTO; COUNTY OF
     SACRAMENTO, SHERIFF'S
17   DEPARTMENT; BILL LOCKYER,
     Attorney General, State of
18   California; RANDI ROSSI, State
     Firearms Director and
19   Custodian of Records,

20            Defendants.

21                       ----oo0oo----

22        In bringing this lawsuit, Plaintiffs David K. Mehl and

23   Lok T. Lau (hereinafter "Plaintiffs" unless otherwise specified)

24   contend, pursuant to 42 U.S.C. § 1983, that Defendants Lou

25   Blanas, as Sheriff of the County of Sacramento, the Sheriff's

26   Department, and Sacramento County (collectively referred to as

27   "Defendants") violated their constitutional rights under the

28   First, Second, Ninth and Fourteenth Amendments to the

                                   1

United States Constitution by denying their applications for a "Carry Concealed Weapon ("CCW") permit.[1]  Defendants now move for summary judgment.  Plaintiffs have not opposed that motion with respect to Plaintiff's Lau's First Cause of Action, which alleges that Defendants' denial of his CCW application was based on race and/or national origin and gender.  In addition, Plaintiffs have conceded that Ninth Circuit precedent currently bars their Fourth and Sixth Causes of Action predicated on the Second and Ninth Amendments, respectively.  Consequently, the only claims as to which Plaintiffs oppose summary judgment are the Second Cause of Action, which asserts equal protection violations, the Third Cause of Action, for alleged violations of Plaintiffs' First Amendment Rights, and the Fifth Cause of Action asserting that Defendants' conduct ran afoul of the Privileges and Immunities clause of the Fourteenth Amendment.

Inasmuch as this Court already determined that a denial of the right to carry a concealed firearm does not constitute a violation of the Privileges and Immunities Clause (See September 2, 2004 Memorandum and Order, p. 15), only Plaintiffs' Second and Third Causes of Action remain subject to adjudication at this time.  For the reasons set forth below, summary judgment will be granted in Defendants' favor as to both of those claims.
///

---

[1] The Court notes that while Bill Lockyer and Randi Rossi were originally named as Defendants, they were dismissed as parties to this lawsuit by Order filed September 3, 2004.  In addition, counsel stipulated to the dismissal of Plaintiff, Frank Flores, pursuant to Federal Rule of Civil Procedure 41(a)(1) on or about December 12, 2006.  Consequently, the parties enumerated above are the only remaining parties to this litigation.

1
2

**BACKGROUND**

3       Individuals seeking permission to carry a concealed weapon
4 in Sacramento County must apply to the Special Investigations and
5 Intelligence Bureau ("SIIB") of the Sacramento County Sheriff's
6 Department for the necessary CCW permit.  According to
7 Defendants, the application process entails an initial review of
8 the application materials by a detective assigned to the SIIB,
9 followed by some investigation by the detective before submission
10 of the request to a three-person committee (generally comprised
11 of two captains and a chief deputy) for either approval or
12 denial.  Following notification of the decision by mail,
13 unsuccessful applicants may appeal an adverse decision.
14 Defendants assert that the appeals procedure includes a personal
15 interview by an appeals officer and an independent review of the
16 panel decision by that officer.

17       Plaintiff Mehl submitted his CCW request in July of 2002.
18 It is undisputed that Mehl did not submit any statement as to why
19 he needed a permit to carry a concealed weapon. (Defendants'
20 Undisputed Fact ("UF") No. 23).  After the application was
21 returned to Mehl as incomplete, he wrote to the Sheriff's
22 Department in protest, citing language of the application
23 instructions indicating that a department interviewer was
24 supposed to prepare that portion of the application.  On
25 August 1, 2002, Chief Robert Denham responded with a letter
26 asking Mehl to himself provide justification for the issuance of
27 CCW permit.  (Exh. "C" to Denham Decl.)
28 ///

3

1   Denham's letter offered to waive any additional application fee

2   upon submission of that information.   Mehl did not respond, and

3   never provided any evidence justifying his need for a CCW permit

4   (Denham Decl., ¶ 4).   Defendants claim that this failure on

5   Mehl's part caused them to deny his application as incomplete.[2]

6       The CCW permit application of the second plaintiff, Lok T.

7   Lau, followed a different course upon its submission about a year

8   later, in August of 2003.  Mr. Lau, a former FBI Special Agent,

9   submitted voluminous materials in connection with his

10  application.  It is undisputed that those materials contained

11  1) an admission by Lau that he had a pending lawsuit against the

12  FBI; 2) a December 13, 2000 Department of Justice appeals

13  decision indicating that Lau had been arrested twice for

14  shoplifting and subsequently had his FBI security clearance

15  revoked for providing false and misleading information;

16  3) information indicating that he had been placed on disability

17  retirement by the FBI due to being diagnosed with Post Traumatic

18  Stress Disorder ("PTSD") and Depression; and 4) reports

19  suggesting that in the Fall of 1996, both Lau's government

20  vehicle and gun and been taken away due to a sleep apnea disorder

21  diagnosed some two years previously.  (See Lau's CCW Application,

22  Exh. "A" to Decl. of C. Scott Harris, Jr.).

23  ///

24  ///

25  _____

26  [2] In addition, Plaintiff Mehl submitted yet another
    application in 2003, and also refrained from providing any
27  justification concerning his need for a CCW permit, despite being
    previously advised that his 2002 application had been rejected on
    that basis.  The 2003 application was accordingly also rejected
28  as incomplete.  (Decl. of Stephen F. Cotta, ¶¶ 4-5).

1   Lau does not dispute the fact that at the time he applied for the

2   CCW permit, he was mentally disabled from depression, PTSD and

3   sleep apnea, and was unable to work.[3]   (UF No. 73).   He further

4   does not dispute that he was under doctors' care for those

5   conditions and was being prescribed anti-depressant and anxiety

6   medications.   (UF No. 74).

7       The committee assessing Lau's application unanimously agreed

8   to deny his application, and noted in its written evaluation that

9   said application presented "too many issues".   (See Decl. of

10  Captain Bill Kelly, ¶ 5); Decl. of James A Cooper, ¶ 5; Decl. of

11  David Lind, ¶ 5).

12      In approximately January of 2004, Plaintiff Lau lodged an

13  appeal which was assessed by Chief C. Scott Harris.   Chief Harris

14  interviewed Lau and felt that he presented as drowsy, unusually

15  nervous, overly suspicious, and somewhat paranoid.   (Harris

16  Decl., ¶ 8).   While Lau takes issue with that characterization,

17  he admitted at his deposition that he had suffered from severe

18  sleep apnea, causing him to feel drowsy and lethargic and

19  affecting his alertness and judgment, for some nine years, a

20  period of time which would have encompassed his CCW application.

21  (Dep. of Lau, December 13, 2006, 8:1-25-9:1-3).   In addition, at

22  the time of his appeals interview, Lau confirmed that he

23  continued to be treated for PTSD and depression, and was on

24  various medications as part of that treatment.   (Harris Decl.,

25  ¶ 8).

26

27      [3] Plaintiff Lau further admitted at his deposition that his
    sleep apnea condition had caused the FBI to take away his gun,
28  and that he informed the Sheriff's Department of this at the time
    he applied for the CCW permit (Lau Dep., 67:11-18; 68:16-18).

1   Chief Harris noted that Lau's application materials included
2   a letter from the FBI attesting to the fact that it had no
3   knowledge or information that Lau was at risk due to his past
4   employment activities with the FBI, despite Lau's claim that he
5   was at such risk. (Harris Decl., ¶ 9).[4]  He states he asked Lau
6   why his former employer had not supplied a letter approving his
7   application for a CCW permit, as is customary for former law
8   enforcement applicant, and that Lau was unable to offer any
9   explanation. (Id. at ¶ 8)  Based on his independent reevaluation
10  of Lau's application along with his observations at the interview
11  he conducted, Chief Harris affirmed the denial of Plaintiff Lau's
12  CCW application. (Id. at ¶ 10).

13  Plaintiffs now claim that their constitutional rights were
14  violated, claiming that their applications would have been
15  approved had they been supporters of, and/or contributors to,
16  Sheriff Lou Blanas' political campaigns. Defendants, on the
17  other hand, claim that the denial of Plaintiffs' applications had
18  nothing to do with whether or not they had ties to Defendant
19  Blanas. Rather, according to Defendants, both applications were
20  rejected for legitimate, non-discriminatory reasons. While
21  Defendants argue that Plaintiffs' claims fail on their merits,
22  they also argue as a fundamental matter that Plaintiffs lack
23  standing to challenge Defendants' policies and procedures in
24  granting CCW permits since the Court can conclude, as a matter of
25  law, that the rejection of their applications had nothing to do
26  with the alleged policies now contested through this lawsuit.

27

28
    [4] In fact, Lau's application materials contained two
    letters, dated March 23, 2001 and May 1, 2003, to this effect.

6

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Rule 56(c).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-587 (1986); First Nat'l Bank v. Cities Ser. Co., 391 U.S. 253, 288-289 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

**ANALYSIS**

California Penal Code § 12025 prohibits the carrying of a concealed weapon unless an individual applies for, and receives, permission to do so pursuant to § 12050(a)(1)(A), which states in pertinent part as follows:

8

1
2
3

> "The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance,...., **may** issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person.....

4 (emphasis added)

5      The language of the statute on its face is permissive in
6 nature, a conclusion confirmed by case law, which indicates that
7 the sheriff has "extremely broad discretion" in whether to grant
8 a CCW permit.  Nichols v. County of Santa Clara, 223 Cal. App. 3d
9 1236, 1240 (1990); see also CBS Inc. v. Block, 42 Cal. 3d 646,
10 655 (describing sheriff's discretion as "unfettered"); Erdelyi v.
11 O'Brien, 680 F.2d 61, 63 (9th Cir. 1982) (statute explicitly
12 grants discretion to officer issuing CCW license).  Plaintiffs
13 nonetheless argue that their constitutional rights were violated
14 because preference was granted to political supporters and/or
15 financial contributors of Sacramento County Sheriff Lou Blanas.

16      In order to proceed with a federal lawsuit alleging
17 violations of the United States Constitution, Plaintiffs must
18 identify an injury "fairly traceable" to conduct on the part of
19 Defendant that is unlawful.  Valley Forge Christian College v.
20 Americans United for Separation of Church and State, Inc., et
21 al., 454 U.S. 464, 472 (1982).  Because this requirement of
22 causal connection has been deemed an indispensable part of any
23 action challenging such violations under 42 U.S.C. § 1983 (see
24 Arnold v. Int'l Business Machines Corp., 637 F.2d 1350, 135
25 (9th Cir. 1981)), Plaintiff bears the burden of establishing
26 causation in order to invoke federal jurisdiction under § 1983.
27 ///
28 ///

1  Plaintiffs accordingly lack standing to seek redress in federal

2  court unless they can make an initial showing that an

3  unconstitutional policy, practice or custom motivated Defendants'

4  denial of their CCW applications.

5      Plaintiffs cannot make that showing in this case, as they

6  must in order to proceed with this lawsuit.  See FW/PBS, Inc. v.

7  Dallas, 493 U.S. 215, 231 (1990) (burden of proof in

8  demonstrating standing rests with party asserting jurisdiction).

9  The evidence shows that Plaintiff Mehl's application was denied

10 not because of any unconstitutional conduct on Defendants' part

11 but instead simply because he never submitted a completed

12 application.  It is undisputed that Chief Denham wrote Mehl on

13 August 1, 2002 and advised him that his application would be

14 considered once he submitted his justification for needing to

15 carry a concealed weapon.  It is equally uncontroverted that

16 Plaintiff Mehl did not respond to that request or provide any

17 further support for his application, even when he reapplied a

18 year later.[5]  The evidence thus supports Defendants' contention

19 that Mehl's application was denied as incomplete rather than

20 because of any motives deemed constitutionally suspect.

21 ///

22

---

23     [5] While Plaintiff Mehl submitted a Declaration in Opposition
   to this Motion suggesting that he was never contacted by anyone
24 at the Sheriff's Department about finishing his application (Mehl
   Decl., ¶ 11), that assertion is contradicted by Chief Denham's
25 letter, which Mehl produced at his deposition (see Mehl Dep.,
   December 14, 2006, 46:23-47:22).   The declaration Plaintiff Mehl
26 has now provided is contrary to the letter that he received.  A
   party cannot create a triable issue of fact sufficient to defeat
27 summary judgment by contradicting his or her own previous sworn
   testimony.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795,
28 806 (1999).

1  Mehl consequently cannot establish standing to assert claims that
2  had no role in the disposition of his particular application.

3      The Ninth Circuit's decision in <u>Madsen v. Boise State Univ.</u>,
4  976 F.2d 1219 (9th Cir. 1992) supports this conclusion.   In
5  <u>Madsen</u>, the plaintiff complained about unconstitutional
6  discrimination in the issuance of disabled parking permits on the
7  Boise State campus.   Like Plaintiffs herein, Madsen filed a civil
8  rights suit under 42 U.S.C. § 1983.   The facts, however, revealed
9  that Madsen never completed the formal permit application for
10  obtaining a disabled parking permit.   The Court ruled that since
11  he did not complete the formal application process, Madsen was
12  precluded from making a constitutional challenge.   As the Ninth
13  Circuit stated:   "A plaintiff lacks standing to challenge a rule
14  or policy to which he has not submitted himself by actually
15  applying for the desired benefit."   <u>Id</u>. at 1220.

16      While this Court recognizes that <u>Madsen</u> may be distinguished
17  on grounds that the Plaintiff in that case submitted no written
18  application at all (instead making only oral inquiries about
19  handicap parking), the rationale for its decision is nonetheless
20  equally applicable.   Both this case and <u>Madsen</u> involved the
21  Plaintiffs' failure to fully avail themselves of the
22  administrative application process before escalating their
23  grievances to the Court.   Without completing the administrative
24  process, it would be sheer speculation to guess at what the
25  decision on Mehl's application would have been or what policies
26  (constitutional or otherwise) may have been implicated in the
27  decision.
28  ///

In the absence of completing that process, Plaintiff Mehl cannot show that any unconstitutional policy played any role in the denial of his CCW application.  As such, Mehl lacks standing and his complaint against Defendants must be dismissed on that basis.

The posture of Plaintiff Lau's complaint is more developed in that there is no question that Lau, unlike Mehl, completed a full CCW application.  Therefore he progresses to the point where it becomes necessary to consider whether any causal connection exists between the decision to deny his request and Defendants' allegedly unconstitutional policies (in favoring applications of campaign supporters and/or financial contributors).  Plaintiff Lau must show some causal link in that regard, and the circumstances of this case show that he cannot.  This is because there is overwhelming evidence that Plaintiff Lau's application was denied for legitimate, non-discriminatory reasons having nothing to do with whether or not he was a campaign contributor.

As delineated above, the application materials submitted by Plaintiff himself showed that he was suffering from PTSD, depression and sleep apnea and was being treated for those conditions at the time of his application, that he had a pending lawsuit against the FBI relating to his disability retirement as a result of those conditions, and that his FBI security clearance had been revoked because of Lau's alleged untruthfulness regarding shoplifting arrests.  Moreover, Lau's application packet included two letters from the FBI expressing its view that Lau was no longer at risk due to his employment, therefore countering Lau's claim that he needed a CCW permit for his protection in that regard.

12

This information was all part of Lau's application, and according to all three members of the panel that initially acted on his application, his application was denied based on those substantive factors.  That decision was confirmed by the notation placed contemporaneously on the application that Lau's CCW request was denied because he had "too many issues".

Additionally, with respect to Plaintiff's appeal, Chief Harris came to the same conclusion after independently reviewing Lau's application and following a personal interview after which he concluded that Plaintiff seemed edgy and suspicious. According to Harris, Lau further confirmed during the course of that interview the same circumstances which caused the panel to initially reject his application.  Moreover, at his deposition Lau himself admitted that he was mentally disabled at the time of his 2003 CCW application (UF No. 73), and that his FBI security clearance was revoked, and his gun taken, due to concerns stemming from his shoplifting and medical condition. (Lok Dep., December 13, 2006, 66:24-68:15).

Because Plaintiff himself, through the materials he personally submitted and through information he directly provided to Chief Harris on appeal, provided ample non-discriminatory reasons justifying Defendants' decision to withhold a CCW permit, he has shown no causal connection whatsoever to the denial of his application and the allegedly unconstitutional policies he identifies in his complaint.  As such, Lau too lacks standing and Plaintiffs' complaint in its entirety therefore fails.

///

///

13

**CONCLUSION**

For the reasons set forth above, neither of the two Plaintiffs remaining in this lawsuit has standing to challenge the allegedly unconstitutional policies of Defendants in favoring political contributors in the issuance of CCW permits.

Plaintiff Mehl lacks standing because he never submitted a complete application despite being specifically directed to do so. Defendants' resulting rejection of his application as incomplete hence has nothing to do with the policies Plaintiff Mehl now challenges as unconstitutional, and he has no standing to make those challenges.

Similarly, the contents of Plaintiff Lau's application materials themselves, as well as the other information Lau personally submitted to Defendants during the course of his CCW application and its subsequent appeal, demonstrate ample cause for the denial of his application that bears no relation to whether or not he was a political supporter of Defendant Blanas. Therefore Lau lacks standing to pursue this lawsuit as well, and summary judgment as requested by Defendants is GRANTED.[6]

///

///

///

///

///

---

[6] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

14

1    Given their lack of standing, it is not necessary to address

2 the additional substantive grounds identified by Defendants as

3 also supporting summary judgment, and the Court declines to do

4 so.[7]  The Clerk is directed to enter judgment in favor of

5 Defendants and against Plaintiffs for the case in its entirety,

6 and close the file in this matter.

7    IT IS SO ORDERED.

8 Dated: February 5, 2008

9

10 _____

11 MORRISON C. ENGLAND, JR.
   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 _____

27     [7] Given Plaintiffs' lack of standing, the Court also denies
   Plaintiffs' Counter Motion for Judgment on the Pleadings, as
   raised in Opposition to Defendants' Motion pursuant to Local
28 Rule 78-230(e).

15